# **<u>EXHIBIT A</u>**

**A STOCK COMPANY**



# EVANSTON INSURANCE COMPANY

Ten Parkway North
Deerfield, IL 60015

**INSURANCE POLICY**

**Coverage afforded by this policy is provided by the Company (Insurer) and named in the Declarations.**

**In Witness Whereof**, the company (insurer) has caused this policy to be executed and attested and countersigned by a duly authorized representative of the company (insurer) identified in the Declarations.

**Secretary**                    **President**

**EVANSTON_000001**          Exh. A 002



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TRADE OR ECONOMIC SANCTIONS

The following is added to this policy:

**Trade Or Economic Sanctions**

This insurance does not provide any coverage, and we (the Company) shall not make payment of any claim or provide any benefit hereunder, to the extent that the provision of such coverage, payment of such claim or provision of such benefit would expose us (the Company) to a violation of any applicable trade or economic sanctions, laws or regulations, including but not limited to, those administered and enforced by the United States Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms and conditions remain unchanged.

**EVANSTON_000002**                    Exh. A 003



# EVANSTON INSURANCE COMPANY

## CALIFORNIA SURPLUS LINES NOTICE (D-2)

**1. THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.**

**2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.**

**3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.**

**4. THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357 OR INTERNET WEB SITE WWW.INSURANCE.CA.GOV. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT WWW.NAIC.ORG.**

**5. FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.**

**6. FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.**

**7. CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV.**

**8. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.**

**EVANSTON_000004**                    Exh. A 005

**INTERLINE**



# PRIVACY NOTICE

We are committed to safeguarding your privacy. We understand your concerns regarding the privacy of your nonpublic personal information. No nonpublic personal information is required to be collected when you visit our websites; however, this information may be requested in order to provide the products and services described.  We do not sell nonpublic personal information to non-affiliated third parties for marketing or other purposes. We only use and share this type of information with non-affiliated third parties for the purposes of underwriting insurance, administering your policy or claim and other purposes as permitted by law, such as disclosures to insurance regulatory authorities or in response to legal process. Notwithstanding the foregoing, we may use this information for the purpose of marketing our own products and services to you.

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms;

- Information about your transactions with us, our affiliates, or others; and/or

- Information we receive from consumer reporting agencies and inspection reports.

We do not disclose any nonpublic personal information about our customers/claimants or former customers/claimants to anyone, except as permitted by law.

We may disclose nonpublic personal information about you to the following types of third parties:

- Service providers, such as insurance agents and/ or brokers and claims adjusters; and/or

- Other non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about our customers/claimants to those individuals who need to know that information to provide products and services to our customers/claimants or as permitted by law.  We maintain physical, electronic, and procedural safeguards to guard your nonpublic personal information.

*Residents of California:*

You may request to review and make corrections to recorded non-public personal information contained in our files.  A more detailed description of your rights and practices regarding such information is available upon request.  Please contact your agent/broker for instructions on how to submit a request to us.

**EVANSTON_000005**                            Exh. A 006

INTERLINE



# EVANSTON INSURANCE COMPANY

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

**EVANSTON_000006**          Exh. A 007



# POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

RE:   Policy Number:  SM931910
      Insured:   Footprints Behavioral Interventions Inc.; Footprints Behavioral Health Corp.
      Insurer:   EVANSTON INSURANCE COMPANY

You are hereby notified that under the Terrorism Risk Insurance Act as amended in 2015 the definition of terrorism has changed. As *defined in Section 102(1) of the Act*: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Under the Act, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. The Act requires Evanston Insurance Company to also notify you that Terrorism Coverage required to be offered by the Act for losses caused by certified acts of terrorism is partially reimbursed by the United States Government under a formula established by federal law. Under this formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

The Terrorism Risk Insurance Act as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

Nothing in this notice affects or modifies your coverage except and only to the extent specifically required by the Act.

Certified Acts of Terrorism coverage is provided for no additional premium.

**EVANSTON_000007**                Exh. A 008



# EVANSTON INSURANCE COMPANY

## DECLARATIONS – SPECIFIED MEDICAL PROFESSIONS INSURANCE POLICY

**Claims Made:**  Under certain Coverage Parts of this policy, the coverage afforded is limited to liability for only those Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company pursuant to the terms herein. Refer to each Coverage Part's opening page to determine if that Coverage Part is Claims Made.

**Notice:**  All Coverage Part of this policy contain provisions that reduce the limits of liability stated in the policy by the costs of legal defense and permit legal defense costs to be applied against the deductible, unless otherwise endorsed. Please read the policy carefully.

POLICY NUMBER: SM931910                    RENEWAL OF POLICY: SM926305

1. **NAMED INSURED:**        Footprints Behavioral Interventions Inc.; Footprints Behavioral Health Corp.

2. **BUSINESS ADDRESS:**    11037 WARNER AVE SUITE 339
FOUNTAIN VALLEY, CA  92708

3. **POLICY PERIOD:**        From  07/25/2019 to 07/25/2020
12:01 A.M. Standard Time at address of Insured stated above

4. **PROFESSIONAL SERVICES AND SPECIFIED PRODUCTS, GOODS, OPERATIONS OR PREMISES:**

   A.    Professional Services:        Counseling, ABA, Occupational, Speech & Language, Social Skills and Behavior Therapy and Training Services

   B.    Specified Products, Goods, Operations or Premises:        Counseling, ABA, Occupational, Speech & Language, Social Skills and Behavior Therapy and Training Operations; all related premises and operations of the Insured

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANY AGREES WITH THE NAMED INSURED TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| Producer Number, Name and Address |
| --- |
| 32453<br>McGowan, Donnelly, & Oberheu<br>2700 Via Fortuna Dr. Ste. 145<br>Austin, TX  78746 |

EVANSTON_000008                    Exh. A 009

**5.   COVERAGE SCHEDULE:**

This policy includes only those Coverage Parts designated below by "X" as purchased. If a Coverage Part is not expressly designated as purchased, this policy does not include such Coverage Part.

| Coverage Part | Coverage Part Purchased | Coverage Part Limits of Liability | Coverage Part Deductible | Coverage Part Retroactive Date |
|---|---|---|---|---|
| **A.**  Specified Medical Professions Professional Liability Insurance Coverage Part  – Claims Made Coverage | Yes __X__ | $1,000,000 Each Claim<br><br>$3,000,000 Aggregate | $1,000 Each Claim | 07/25/2008 |
| **B.**  Specified Medical Professions General Liability Insurance Coverage Part – Claims Made Coverage | Yes __X__<br>No _____ | $1,000,000 Coverage A. Each Occurrence<br><br>$50,000 Damage to Premises - Any One Premises<br><br>$1,000,000 Coverage B. Each Person or Organization<br><br>$5,000 Coverage C. Each Injured Person<br><br>$3,000,000 Aggregate - All Coverages | $1,000 Coverage A. Each Occurrence<br><br><br><br>$1,000 Coverage B. Each Person or Organization | 07/25/2005 |
| **C.**  Specified Medical Professions General Liability Insurance Coverage Part – Occurrence Coverage | Yes _____<br>No __X__ | $Not Purchased Coverage A. Each Occurrence<br><br>$Not Purchased Damage to Premises - Any One Premises<br><br>$Not Purchased Coverage B. Each Person or Organization<br><br>$Not Purchased Coverage C. Each Injured Person<br><br>$Not Purchased Aggregate - All Coverages | $Not Purchased Coverage A. Each Occurrence<br><br><br><br>$Not Purchased Coverage B. Each Person or Organization | |

**6.      PREMIUM FOR POLICY PERIOD:**

Minimum
Deposit ███████████

**7.      RATE:** ███████

   **PREMIUM BASE:** ███████

**8.      PREMIUM FOR EXTENDED REPORTING PERIOD:** ██████████████
███████

9.   The Insured is not a proprietor, superintendent, executive officer, director, partner, trustee or employee of any hospital, sanitarium, clinic with bed-and-board facilities, laboratory, or any business enterprise not named in Item 1. hereinabove, except as follows:

None

10.   **ENDORSEMENTS ATTACHED AT POLICY INCEPTION:**
See MDIL 1001 08 10 attached.

11.   **NOTICES**:

Notices required to be provided to the Company under this policy shall be by email, fax or mail addressed to:

**CLAIM OR DISCOVERY CLAUSE NOTICES:**

Claims Service Center
MARKEL SERVICE, INCORPORATED
Ten Parkway North
Deerfield, Illinois 60015

E-mail: newclaims@markelcorp.com
Fax: (855) 662-7535

**ALL OTHER NOTICES:**

Markel Mid South Region, a division of Markel Service, Incorporated
7500 Dallas Parkway, Suite 400
Plano, TX  75024-4018
Telephone: (469) 241-3400
Fax: (866) 730-3615

**These declarations, together with the Common Policy Conditions, Coverage Part(s), any Endorsement(s) and any application(s) complete the above numbered policy.**

| Countersigned: 7/9/2019 | By: _Bryan W. Sales_ |
| (Date) | AUTHORIZED REPRESENTATIVE |

**EVANSTON_000010**                     Exh. A 011



# EVANSTON INSURANCE COMPANY

## FORMS SCHEDULE

| FORM NUMBER | FORM NAME |
|---|---|
| MJIL 1000 08 10 | Policy Jacket |
| MIL 1214 09 17 | Trade Or Economic Sanctions |
| MPIL 1005-CA 01 17 | California Surplus Lines Notice (D-2) |
| MPIL 1007 03 14 | Privacy Notice |
| MPIL 1083 04 15 | US Treasury Dept's Office Of Foreign Assets Control ("OFAC") Notice |
| ZZ-50000 01 15 | Policyholder Disclosure of Terrorism Insurance Cov |
| MDSM 5013 GL 08 15 | Dec Spec Med Professions Insurance Policy |
| MDIL 1001 08 10 | Forms Schedule |
| MESM 5100 02 16 | Common Policy Conditions |
| MESM 5010 08 15 | Spec Medical Professions Profes Liab Ins Cov Part |
| MESM 5011 08 15 | General Liab Ins Cov Part - Claims Made |
| EIC 4638 01 15 | Certified Acts of Terrorism Endorsement |
| EIC 832-01 10 02 | Asbestos Exclusion |
| MEIL 1200-CA 03 16 | Service of Suit - California |
| MEIL 5200-25% 07 04 | Minimum Earned Premium Endorsement |
| MEIL 5229 09 10 | Longer Duratn Extended Report Period Availability |
| MESM 1005 08 15 | Addt Insd End for Landlords, Spons or Less (Occur) |
| MESM 1006 08 15 | Additional Insured Endorsement - General Liability |
| MESM 2025 08 15 | Amendment of General Liability Coverage A. - HNOA |
| MESM 2034 08 15 | DataBreach Coverage Parts Endorsement |
| MESM 2057 08 15 | Sexual Acts Liability Endorsement |
| MESM 3015 08 15 | Exclusion - Unmanned Aircraft |
| ZZ-44002-01 | Mold Exclusion |

**EVANSTON_000011**

Exh. A 012

INTERLINE

**MARKEL**®

# EVANSTON INSURANCE COMPANY

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

Throughout this policy, the term Company refers to the insurance company providing this insurance.

### A.  CANCELLATION

This policy may be cancelled by the Named Insured on behalf of all Insureds by mailing to the Company written notice as stated in the Notices item of the Declarations stating when thereafter such cancellation shall be effective. If cancelled by the Named Insured, the Company shall retain the customary short rate proportion of the premium. Payment or tender of unearned premium shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

This policy may be cancelled by the Company by mailing to the Named Insured, at the address stated in the Declarations written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if the Company cancels the policy because the Named Insured has failed to pay a premium or Deductible when due, including premium and deductible(s) due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies for which this policy is a renewal or replacement, this policy may be cancelled by the Company by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. Such notice shall be conclusive on all Insureds. Delivery of such written notice by the Named Insured or the Company shall be equivalent to mailing. If cancelled by the Company, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

### B.  CHANGE IN CONTROL OF NAMED INSURED

If after the inception date of the policy:

**1.**  The Named Insured is merged into or consolidated with another organization such that it is not the surviving organization, or sells all or substantially all of its assets to another organization or person or group of organizations and/or persons acting in concert;

**2.**  Another organization or person or group of organizations and/or persons acting in concert shall acquire an amount of the voting interest representing more than fifty percent (50%) of the voting rights for the election or appointment of directors or trustees of the Named Insured, or acquires the voting rights of such an amount of such interest; or

**3.**  A receiver, liquidator, conservator, trustee or similar official is appointed with respect to the Named Insured;

no coverage shall be afforded under this policy unless:

**a.**  Written notice of such transaction or event is given to the Company by the Named Insured as soon as practicable, but in no event later than thirty (30) days after such transaction or event, including complete details of the nature of such transaction or event and the other organization, person, group of organizations, persons acting in concert, receiver, liquidator, conservator, trustee and/or similar official appointed with respect to the Named Insured;

**b.**  The Named Insured submits such additional information in connection therewith as the Company may deem necessary;

**c.**  The Company, at its sole discretion, agrees to continue coverage by written endorsement to the policy; and

**d.**  The Named Insured agrees to accept any special terms, conditions, exclusions or additional premium charge as may be required by the Company.

**EVANSTON_000012**

Exh. A 013

**INTERLINE**

## C. REPRESENTATIONS

By acceptance of this policy, the Insureds agree as follows:

**1.** That the information and statements contained in the application(s) are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy; and

**2.** That the information and statements contained in the application(s) are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Company under this policy, and that this policy is issued in reliance upon the truth of such representations.

## D. ENTIRE AGREEMENT

The Declarations, Common Policy Conditions, Coverage Part(s), the application(s) and any written endorsements attached hereto shall be deemed to be a single unitary contract.

## E. OTHER INSURANCE

This insurance shall be in excess of the applicable Deductible stated in the Declarations and any other insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this policy.

If any Claim under this policy is also covered by one or more policies issued by the Company or any of its affiliated companies affording coverage to the Named Insured or to any organization or person who controls, is controlled by, or is affiliated by common control with the Named Insured unless such other insurance is written only as specific excess insurance or umbrella insurance over the Limits of Liability provided in this policy, then with respect to such Claim:

**1.** The Limit of Liability available under this policy will be equal to the percentage that this policy's available Limit of Liability bears to the total combined Limits of Liability available under all applicable policies; and

**2.** The total Limit of Liability available for such Claim shall not exceed the greater/est available Limit of Liability remaining on all such policies and its payment shall extinguish the Company's and its affiliated companies' liability on all such policies for such Claim.

## F. CHANGES

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy and shall not estop the Company from asserting any right under the terms of the policy. The terms of this policy shall not be waived or changed, except by written endorsement issued to form a part of this policy, and this policy embodies all agreements existing between the Insureds and the Company or any of its agents relating to this insurance.

## G. ASSIGNMENT OF INTEREST

Assignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon.

## H. SUBROGATION

In the event of any payment under this policy, the Company shall be subrogated to the right of recovery of all Insureds to the extent of such payment. The Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after the Claim to prejudice such rights.

The Company shall not exercise any such rights against any person or organization included in the definition of Insured. Notwithstanding the foregoing, however, the Company reserves the right to exercise any rights of subrogation against an Insured in respect of any Claim brought about or contributed to by an intentional, willful, dishonest, fraudulent act or omission of such Insured or by an act or omission of such Insured that constitutes a willful violation of any statute or regulation.

Any amount so recovered, whether effected by the Company or by the Insured, shall first be used for the repayment of expenses incurred toward subrogation; second, for any Damages and Claim Expenses payment by the Insured which is in excess of the amount of the Limit of Liability under this policy and which is excess of any amount paid by any insurer under any other policy; third, for any damages and claims expenses payment by any excess insurer on

**EVANSTON_000013**

Exh. A 014

**INTERLINE**

behalf of the Insured; fourth, for any damages and claim expenses payment by any primary insurer on behalf of the Insured; and, last, for repayment of the Insured's Deductible.

**I.    ASSISTANCE AND COOPERATION OF THE INSURED**

The Insured shall cooperate with the Company and upon the Company's request, the Insured shall:

**1.**   Submit to examination and interview by a representative of the Company, under oath if required;

**2.**   Attend hearings, depositions and trials;

**3.**   Assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits;

**4.**   Give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim; and

**5.**   Provide any information required to comply with federal or state reporting regulations;

All without cost to the Company. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the Insured may have. The Insured shall not, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation or incur any expense without the prior written consent of the Company.

**J.    FALSE OR FRAUDULENT CLAIMS**

If any Insured shall commit fraud in proffering any Claim, this insurance shall become void as to such Insured from the date such fraudulent Claim is proffered.

**K.    PREMIUM AND AUDIT**

Upon expiration of this policy, the Named Insured shall furnish to the Company a statement of the Named Insured's actual total premium base as stated in the Declarations for the Policy Period. The actual earned premium shall be computed thereon at the premium rate stated in the Declarations. If the actual earned premium is more than the deposit premium stated in the Declarations, the Named Insured shall pay the difference to the Company; if less, the Company shall refund the difference to the Named Insured except that the Company shall be entitled to the minimum premium as stated in the Declarations. The Company shall have the right to require of the Named Insured, at any time within the said Policy Period or one year thereafter, a sworn statement of the entire amount (or number) of such premium base during the whole or any specified part of the said period, and the Named Insured shall furnish said statement within ten (10) days after request. The statement referred to shall be subject to verification and audit by a duly authorized representative of the Company, who shall have the right and opportunity to examine the books and records of the Named Insured as respects such premium base, and such examination may be made at any time during the said period and within three (3) years thereafter. The rendering of any estimate or statement or the making of any previous settlement shall not bar the examination herein provided for, nor the Company's right to additional premium.

**L.    INSPECTION**

The Company shall be permitted but not obligated to inspect the Insured's operations at any time. Neither the Company's right to make inspections, nor the making thereof, nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Insured or others, to determine or warrant that such operations are safe or healthful, or are in compliance with any law, rule or regulation.

**M.    ACTION AGAINST THE COMPANY**

No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms and conditions of this policy, nor until the amount of the Insured's obligation to pay shall have been fully and finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

**EVANSTON_000014**

Exh. A 015

**INTERLINE**

**N. AUTHORIZATION**

By acceptance of this policy, the first person or organization stated in Item 1. of the Declarations shall act on behalf of all Insureds with respect to the giving and receiving of all notices to and from the Company as provided herein: the exercising of the Extended Reporting Period, if available; the cancellation of this policy in whole or part; the payment of premiums and Deductibles when due; the receiving of any return premiums that may become due under this policy; and the Insureds agree that such person or organization shall act on their behalf.

**O. POLICY EXTENDED REPORTING PERIOD – ALL CLAIMS MADE COVERAGES**

The Named Insured's right to exercise the Extended Reporting Period under any Coverage Part shall exist solely if the Named Insured also exercises its right to purchase the Extended Reporting Period under all Coverage Parts that provide coverage on a claims made basis.

**P. TERMS AND CONDITIONS**

This policy is comprised of these Common Policy Conditions, the Declarations, various Coverage Parts and endorsements, if applicable, and the application. Although various Coverage Parts may be referenced in this policy, a Coverage Part is included within this policy only if that Coverage Part is stated as being purchased in the Coverage Schedule in Item 5. of the Declarations.

Except for these Common Policy Conditions or unless stated to the contrary in any Coverage Part or endorsement, the terms and conditions of each Coverage Part of this policy apply only to that Coverage Part and shall not apply to any other Coverage Part of this policy. Any defined term referenced in the Common Policy Conditions but defined in a Coverage Part shall, for purposes of coverage under that Coverage Part, have the meaning set forth in that Coverage Part. If any provision in the Common Policy Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part.

**Q. SERVICE OF SUIT**

Except with respect to any policy issued in any state in which the Company is licensed as an admitted insurer to transact business, it is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Secretary, Legal Department, Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois 60015 and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this policy, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**R. NUCLEAR ENERGY LIABILITY EXCLUSION (Broad Form)**

The insurance does not apply:

**1.** Under any Liability Coverage, to Bodily Injury or Property Damage:

   **a.** With respect to which an Insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **b.** Resulting from the Hazardous Properties of Nuclear Material and with respect to which **(1)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law

amendatory thereof, or **(2)** the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**2.** Under any Medical Payments coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to Bodily Injury resulting from the Hazardous Properties of Nuclear Material and arising out of the operation of a Nuclear Facility by any person or organization.

**3.** Under any Liability Coverage, to Bodily Injury or Property Damage resulting from Hazardous Properties of Nuclear Material, if:

   **a.** The Nuclear Material **(1)** is at any Nuclear Facility owned by, or operated by or on behalf of, an Insured or **(2)** has been discharged or dispersed therefrom;

   **b.** The Nuclear Material is contained in Spent Fuel or Waste at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an Insured; or

   **c.** The Bodily Injury or Property Damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any Nuclear Facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to Property Damage to such Nuclear Facility and any property thereat.

**4.** As used in this exclusion:

Hazardous Properties includes radioactive, toxic or explosive properties.

Nuclear Material means Source Material, Special Nuclear Material or By-Product Material.

Source Material, Special Nuclear Material, and By-Product Material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

Spent Fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a Nuclear Reactor.

Waste means any waste material **(1)** containing By-Product Material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its Source Material content, and **(2)** resulting from the operation by any person or organization of any Nuclear Facility included under the first two paragraphs of the definition of Nuclear Facility.

Nuclear Facility means:

   **a.** Any Nuclear Reactor;

   **b.** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing Spent Fuel, or **(3)** handling, processing or packaging Waste;

   **c.** Any equipment or device used for the processing, fabricating or alloying of Special Nuclear Material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **d.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of Waste;

And includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

Nuclear Reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

Property Damage includes all forms of radioactive contamination of property.

**EVANSTON_000016**                    Exh. A 017

INTERLINE



# EVANSTON INSURANCE COMPANY

## SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

THIS IS A CLAIMS MADE COVERAGE PART. PLEASE READ IT CAREFULLY.

THE INSURED .................................................................................................................................................2

INSURING AGREEMENT....................................................................................................................................2

DEFINITIONS......................................................................................................................................................3

THE EXCLUSIONS .............................................................................................................................................4

TERRITORY........................................................................................................................................................6

LIMITS OF LIABILITY .........................................................................................................................................6

DEFENSE AND CLAIM EXPENSES ...................................................................................................................7

CLAIMS ..............................................................................................................................................................7

EXTENDED REPORTING PERIOD .....................................................................................................................8

**EVANSTON_000017**                    Exh. A 018

**INTERLINE**

# SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

THIS IS A CLAIMS MADE COVERAGE PART. PLEASE READ IT CAREFULLY.

In consideration of the premium paid, the undertaking of the Named Insured to pay the Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the application attached hereto and made a part hereof and the underwriting information submitted on behalf of the Insured, and subject to all the terms, conditions and limitations of this policy, the Company and the Insured agree as follows:

## THE INSURED

The unqualified word "Insured," either in the singular or plural, means:

**A.**   The Named Insured which is herein defined as the person(s) or organization(s) stated in Item 1. of the Declarations;

**B.**   Any past or current principal, partner, officer, director, Employee or Volunteer Worker of the Named Insured solely while acting on behalf of the Named Insured and within the scope of their duties as such; provided, however, this insurance shall not apply to any Claim made against any Insured who is a physician, surgeon, dentist or podiatrist arising out of the rendering of or failure to render Professional Services in his/her capacity as a physician, surgeon, dentist or podiatrist;

**C.**   If the Named Insured is a limited liability company, any past or current manager thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as manager of such limited liability company and any past or current member thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as a member of such limited liability company;

**D.**   Any medical director solely while acting on behalf of the Named Insured and solely within the scope of his/her Administrative Duties as such; provided, however, this insurance shall not apply to any Claim made against any medical director who is a physician, surgeon, dentist or podiatrist arising out of the rendering of or failure to render Professional Services in his/her capacity as a physician, surgeon, dentist or podiatrist;

**E.**   Any student enrolled in a training program in connection with the Named Insured's Professional Services solely while acting within the scope of his/her duties as such and at the Named Insured's direction;

**F.**   The heirs, executors, administrators, assigns and legal representatives of each Insured above in the event of death, incapacity or bankruptcy of such Insured, but only for each such Insured's liability as is otherwise covered herein.

## INSURING AGREEMENT

**A.**   **Professional Liability and Claims Made Clause:**   The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section CLAIMS A., Claim Reporting Provision, for Professional Personal Injury:

**1.**   By reason of any act, error or omission in Professional Services arising out of the conduct of the Insured's Professional Services rendered or that should have been rendered by an Insured; or

**2.**   By reason of any act, error or omission in Professional Services arising out of the conduct of the Insured's Professional Services rendered or that should have been rendered by a natural person, who is not and shall not be an Insured hereunder, and through whose acts the Insured controls the provider-patient relationship as of the time of such act, error or omission;

provided:

**a.**   The act, error or omission happens during the Policy Period or on or after the Retroactive Date stated in the Declarations and before the end of the Policy Period; and

**b.**   Prior to the effective date of this policy the Insured had no knowledge of such act, error or omission or any fact, circumstance, situation or incident which may lead a reasonable person in the Insured's position to conclude that a Claim was likely.

**EVANSTON_000018**                                           Exh. A 019

**INTERLINE**

## DEFINITIONS

**A.** **Administrative Duties** means establishing medical protocol, serving on a standards review, peer review, or credentialing committee or similar professional board or committee of the Named Insured; provided, however, Administrative Duties shall not include:

    **1.** Rendering or failure to render Professional Services by a medical director which results in Professional Personal Injury; or

    **2.** Rendering or failure to render specific medical direction for a natural person receiving Professional Services via telecommunications to other healthcare professionals.

**B.** **Claim** means the Insured's receipt of:

    **1.** A written demand for Damages or Professional Services; or

    **2.** The service of suit or institution of arbitration proceedings against the Insured seeking Damages.

**C.** **Claim Expenses** means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, Claim Expenses shall not include:

    **1.** Salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or

    **2.** Salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

**D.** **Damages** means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include:

    **1.** Punitive or exemplary damages or multiplied portions of damages in excess of actual damages, including trebling of damages;

    **2.** Taxes, criminal or civil fines, or attorneys' fees of a party other than an Insured or other penalties imposed by law;

    **3.** Sanctions;

    **4.** Matters which are uninsurable under the law pursuant to which this Coverage Part shall be construed;

    **5.** The return, withdrawal, reduction or restitution or payment of fees, profits or charges for services or consideration and/or any expenses paid to the Insured; or

    **6.** The cost of complying with an award or order for declaratory, equitable or injunctive relief or remedy.

**E.** **Employee** means any natural person while in the regular service of the Named Insured in the ordinary course of the Named Insured's business and whom the Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service. Employee includes a Leased Worker but does not include any Temporary Worker or independent contractor.

**F.** **Leased Worker** means any natural person leased to the Named Insured by a labor leasing organization, under an agreement between the Named Insured and the labor leasing organization, to perform duties related to the conduct of the Named Insured's business and which are at the Insured's direction. Leased Worker does not include a Temporary Worker.

**G.** **Policy Period** means the period form the inception date of this policy to the policy expiration date stated in Item 3. of the Declarations, or the effective date of any earlier cancellation or termination.

**H.** **Professional Personal Injury** means:

    **1.** Any bodily injury, mental injury, sickness, disease, emotional distress or mental anguish, including death resulting therefrom of any natural person receiving Professional Services arising out of an act, error or omission in Professional Services rendered or that should have been rendered;

**EVANSTON_000019**    Exh. A 020

**INTERLINE**

2.  False arrest, detention or imprisonment, or malicious prosecution of any natural person receiving Professional Services, except when inflicted by, at the direction of, or with the consent or acquiescence of the Insured who has predetermined to commit such act, or allowed such act to have been committed; or

3.  The publication or utterance of a libel or slander concerning a natural person receiving Professional Services or a publication or an utterance in violation of such person's right to professional confidence, except when published or uttered by, at the direction of, or with the consent or acquiescence of the Insured who has predetermined to commit such act, or allowed such act to have been committed.

I.  **Professional Services** means those services stated in Item 4. of the Declarations.

J.  **Temporary Worker** means any natural person who is furnished to the Named Insured to substitute for a permanent Employee on leave or to meet seasonal or short-term work load requirements.

K.  **Volunteer Worker** means any natural person who is not an Employee of the Named Insured and who donates his/her work at the direction of and within the scope of duties determined by the Named Insured and is not paid a fee, salary or other compensation by the Named Insured or by anyone else for such work performed for the Named Insured.

## THE EXCLUSIONS

This Coverage Part does not apply to:

A.  Any act, error or omission in Professional Services rendered or that should have been rendered or Professional Personal Injury committed in violation of any law or ordinance;

B.  Any Claim based upon or arising out of any dishonest, fraudulent, criminal, malicious, knowingly wrongful, deliberate, or intentional acts, errors or omissions committed by or at the direction of the Insured;

C.  Any administrative or judicial hearings pertaining to Medicare/Medicaid fraud or any other hearing initiated against an Insured by the United States Department of Health & Human Services (HHS) or by an utilization or quality review organization under contract with HHS; provided, however, this exclusion shall not apply to HHS proceedings that allege the violation of the Emergency Medical Treatment and Labor Act;

D.  Any Claim based upon or arising out of the invasion, infringement or interference of the right of privacy arising from the use, visitation of, posting or browsing of any blog, bulletin board services, chat room, web site or other internet form or URL;

E.  Any Claim based upon or arising out of the gathering, use or dissemination of personal information in any form including but not limited to any violation of the Health Insurance Portability and Accountability Act of 1996 (HIPAA);

F.  Any Claim based upon or arising out of any unlawful discrimination by any Insured;

G.  Any Claim based upon or arising out of any act, error or omission committed or alleged to have been committed by the Insured that in any manner relates to or arises out of the actual, alleged or threatened discharge, dispersal, release, escape or existence of pollutants, hazardous substances, toxic substances or substances which in any manner impair or allegedly impair the environment or which result in bodily injury or property damage;

H.  Any liability arising out of the Insured's activities in his/her capacity as proprietor, superintendent, executive officer, director, partner, trustee or employee of any hospital, sanitarium, clinic with bed-and-board facilities, laboratory or business enterprise, or any governmental body, sub-division or agency not named as an Insured under this policy unless such activities are disclosed in the application and covered by endorsement to this policy;

I.  Any Claim based upon or arising out of any liability of others assumed by the Insured under any contract or agreement; unless such liability would have attached to the Insured even in the absence of the contract or agreement;

J.  Any Claim arising out of general liability, or goods or products manufactured, sold, handled or distributed by the Insured or by others trading under an Insured's name;

K.  Any liability arising out of the ownership, maintenance, operation, use, loading or unloading of any vehicle, watercraft or aircraft;

L.  Any Claim based upon or arising out of any sexual act, including without limitation sexual intimacy (even if consensual), sexual contact, sexual advances, requests for sexual favors, sexual molestation, sexual assault, sexual abuse, sexual harassment, sexual exploitation or other verbal or physical conduct of a sexual nature;

EVANSTON_000020

Exh. A 021

INTERLINE

provided, however, the Company agrees to defend the Named Insured for such a Claim for the strictly vicarious liability of the Named Insured, unless a manager, supervisor, officer, director, trustee or partner of the Named Insured:

**1.** Knew or should have known about the sexual act allegedly committed by the Insured but failed to prevent or stop it; or

**2.** Knew or should have known that the Insured who allegedly committed the sexual act had a prior history of such sexual misconduct act;

The Company shall not pay Damages on behalf of the Named Insured for such a Claim.

**M.** Injury arising out of the performance of a criminal act or caused by an Insured while under the influence of intoxicants or narcotics;

**N.** Any Claim based upon, arising out of, or in any way involving:

**1.** The employment relationship or the nature, terms or conditions of employment or any workplace tort brought by or on behalf of any Employee, former Employee, prospective employee, independent contractor or consultant of the Insured or to Professional Personal Injury to, or sickness, disease or death of any Employee of the Insured arising out of, and in the course of his/her employment by the Insured;

**2.** Any obligation of the Insured under any workers' compensation, unemployment compensation or disability benefits law or under any similar law;

**3.** Any actual or alleged violation of the Employee Retirement Income Security Act of 1974, or any other similar federal, state or common law or any amendments thereto;

**O.** Any Claim based upon or arising out of:

**1.** The dispensing of or the use of any drug or device whose approval for use was withdrawn by the U.S. Food and Drug Administration (FDA) at the time such drug or device was used or dispensed;

**2.** Use, administration or prescription of any drug, pharmaceutical, medical device or procedure which has not received final approval by the FDA for treatment of humans or which is not used, administered or prescribed as part of an FDA approved study;

**P.** Any Claim based upon or arising out of a warranty or guarantee of cure or success of treatment which is alleged to have arisen out of an advertisement;

**Q.** Any Claim based upon or arising out of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C., Section 1961, et seq.;

**R.** Any Claim based upon or arising out of the disarming or disabling of any alarms or monitoring devices of medical equipment;

**S.** Any Claim based upon or arising out of:

**1.** The failure to maintain medical records in their original condition;

**2.** Creating, altering, amending or modifying medical records;

**3.** Improperly disposing of medical records;

**4.** The failure to maintain the privacy and security of medical records or private personal information;

**T.** Any Claim made against the Insured:

**1.** By any person or organization or its subrogee, assignee, contractor, subcontractor, or parent company, subsidiary, division or affiliated company which was or is operated, managed, owned or otherwise controlled, whether directly or indirectly, or in whole or in part, by an Insured or parent company or any subsidiary, division or affiliated organization; or

**2.** By or on behalf of any Insured under this policy; provided, however, this exclusion shall not apply to any Claim made against any Insured arising out of the rendering of or failure to render Professional Services by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible, if such Insured is a natural person receiving Professional Services;

**U.** Any Claim based upon or arising out of:

**MESM 5010 08 15**

EVANSTON_000021

Exh. A 022

**INTERLINE**

1. Any allegations of price fixing, unfair competition or trade practices;

2. A dispute over fees, income or revenue;

3. The inducement to enter into, the interference with or the dissolution or termination of any business or economic relationship; or

4. Violations of any federal, state or local law (including but not limited to Title 15 of the United States Code or any similar state statute) that prohibits the unlawful restraint of trade, business or profession;

**V.** Any Claim based upon or arising out of any violation of:

1. The Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal, state or local statute, law, rule, ordinance or regulation;

2. The CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;

3. The Fair Credit Reporting Act (FCRA) and amendments thereto or any similar or related federal, state or local statute, law, rule, ordinance or regulation, including the Fair and Accurate Credit Transactions Act of 2003 (FACTA); or

4. Any other statute, law, rule, ordinance or regulation that addresses, prohibits or limits the dissemination, sending, transmitting, communication, printing, disposal, collection, recording or distribution of information or other material;

**W.** Any Claim based upon or arising out:

1. Any disciplinary proceeding against the Insured conducted by any regulatory body, disciplinary board or governmental agency; or

2. Any federal or state inquiry or review involving an Insured's professional licensure; or

**X.** Any Claim brought under any other Coverage Part of this policy.

## TERRITORY

The insurance afforded applies worldwide, provided the Claim is made in the United States of America, its territories or possessions or Puerto Rico.

## LIMITS OF LIABILITY

**A.** **Limit of Liability-Each Claim:** For Professional Liability, the total liability of the Company for the combined total of Damages and Claim Expenses for each Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Claim.

**B.** **Limit of Liability-Coverage Part Aggregate:** Subject to the above Section LIMITS OF LIABILITY A., for Professional Liability, the total liability of the Company shall not exceed the Coverage Part Aggregate Limit of Liability as stated in the Declarations for all Damages and Claim Expenses arising out of all Claims first made against the Insured during the Policy Period and the Extended Reporting Period, if exercised.

**C.** **Limit of Liability-Reduction for Refusal to Settle:** The Company shall not settle any Claim without the consent of the Insured. If, however, the Insured is a partnership, professional association, professional corporation or limited liability company, the written consent of an Insured who was formerly but is no longer a member of the partnership, professional association or limited liability company or director, officer, stockholder or employee of a professional corporation will not be required, provided the written consent of the corporate directors, officers, stockholders or employees of a professional corporation, or their duly appointed representatives, has been obtained. If, however, the Insured shall refuse to consent to any settlement recommended by the Company and shall elect to contest the Claim or continue any legal proceedings in connection with such Claim, then the Company's liability for the Claim shall not exceed the amount for which the Claim could have been so settled including Claim Expenses incurred up to the date of such refusal. Such amounts are subject to the provisions of the above Limits of Liability A. and B.

**D.** **Deductible:** For Professional Liability, the Deductible amount stated in the Declarations shall be paid by the Named Insured and shall be applicable to each Claim and shall include Damages and Claim Expenses, whether or not Damages payments are made.

EVANSTON_000022

Exh. A 023

**INTERLINE**

Such amounts shall, upon written demand by the Company, be paid by the Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Claim shall not exceed the Deductible amount stated in the Declarations.

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

E.   **Multiple Insureds, Claims and Claimants:**   The inclusion herein of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of Liability stated in the Declarations. More than one Claim arising out of a single act, error or omission or a series of related acts, errors or omissions shall be considered a single Claim. All such Claims, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such act, error or omission is made, or with regard to written notice given to and accepted by the Company pursuant to Section CLAIMS B., Discovery Clause, on the date within the Policy Period on which such written notice of potential Claim is first received by the Company.

## DEFENSE AND CLAIM EXPENSES

A.   **Defense and Investigation of Claims:**   The Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

1.   Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the Professional Liability Limits of Liability stated in the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the Professional Liability Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages and/or Claim Expenses.

2.   The Company shall select defense counsel; provided, however, that if the law of the state of the Named Insured's domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

   a.   Providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

   b.   Providing any other reasonable information requested;

   c.   Providing fully itemized billing on a periodic basis; and

   d.   Cooperating with the Company and the Insured in resolving any discrepancies;

   and the fees and costs incurred by such defense counsel, including those fees and costs generated by defense counsel's cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be a part of and shall not be in addition to the Professional Liability Limits of Liability stated in the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible.

## CLAIMS

A.   **Claim Reporting Provision:**   It is a condition precedent to coverage afforded by this Coverage Part that the Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

B.   **Discovery Clause:**   If during the Policy Period, the Insured first becomes aware of a specific act, error or omission in Professional Services which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part, then the Insured may provide written notice as stated in the Declarations to the Company containing

EVANSTON_000023                              Exh. A 024

the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such act, error or omission in Professional Services shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

1. The description of the specific act, error or omission in Professional Services;

2. The date on which such act, error or omission in Professional Services took place;

3. The injury or damage which has or may result from such act, error or omission in Professional Services;

4. The identity of any injured persons; and

5. The circumstances by which the Insured first became aware of such act, error or omission in Professional Services.

Subject to the paragraph hereinabove, if during the Policy Period the Insured provides such written notice of a specific act, error or omission in Professional Services which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part, the Company at its sole option, may investigate such specific act, error or omission in Professional Services. Such matter shall be subject to all terms, conditions and provisions in this Coverage Part as applicable to a Claim.

## EXTENDED REPORTING PERIOD

A. The Named Insured's right to exercise the Extended Reporting Period under this Coverage Part shall exist solely if the Named Insured also exercises its right to purchase the Extended Reporting Period under all Insuring Agreements in the policy for which an Extended Reporting Period is available.

B. If the Named Insured nonrenews this policy in its entirety or cancels this policy in its entirety pursuant to Common Policy Conditions Section A., Cancellation, or if the Company nonrenews this policy in its entirety or cancels this policy in its entirety pursuant to Common Policy Conditions A., Cancellation, for reasons other than nonpayment of premium, Deductible or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right upon payment of an additional premium calculated at the percentage stated in the Declarations of the adjusted annual premium for the Policy Period, subject to adjustment as per Common Policy Conditions K., Premium and Audit, but in no event less than the percentage stated in the Declarations of the annual minimum premium for the policy, to extend the coverage granted under this Coverage Part, for the period of months stated in the Declarations, as elected by the Named Insured to apply to Claims first made against the Insured during the period of months as elected and reported to the Company pursuant to, Section CLAIMS A., Claim Reporting Provision, following immediately upon the effective date of such cancellation or nonrenewal, for any act, error or omission in Professional Services which happened on or after the applicable Retroactive Date stated in the Declarations and prior to the effective date of such cancellation or nonrenewal and which is otherwise covered by this Coverage Part.

This extended period of coverage months as elected by the Named Insured and described in this paragraph shall be referred to in this policy as the Extended Reporting Period.

If, however, this Coverage Part is immediately succeeded by claims made insurance coverage on which the Professional Liability Retroactive Date is the same as or earlier than that stated in the Declarations of this policy, the succeeding insurance shall be deemed to be a renewal hereof and, in consequence, the Named Insured shall have no right to purchase an Extended Reporting Period.

The quotation of a different premium and/or deductible and/or limit of liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

This Extended Reporting Period shall not be available when any Insured's license or right to practice his/her profession is revoked, suspended or surrendered.

C. As a condition precedent to the right to purchase the Extended Reporting Period, the Named Insured must have paid:

1. All Deductibles when due; and

2. All premiums due for the Policy Period; and

EVANSTON_000024

Exh. A 025

**INTERLINE**

3.   All premium and deductible(s), if any, due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement.

The right to purchase the Extended Reporting Period shall terminate unless a written request for the Extended Reporting Period is received by the Company within thirty (30) days after the effective date of cancellation or nonrenewal together with payment of the additional deposit premium for the Extended Reporting Period. If such written request and payment of additional premium for the Extended Reporting Period are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

**D.**   The Named Insured shall pay any additional premium that may be due as a result of audit, promptly when due.

**E.**   In the event of the purchase of the Extended Reporting Period the entire premium therefor shall be fully earned at its commencement.

**F.**   The Extended Reporting Period shall not in any way increase the Limits of Liability stated in the Declarations.

**MESM 5010 08 15**                                                            **Page 9 of 9**

Exh. A 026

INTERLINE



# EVANSTON INSURANCE COMPANY

## SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE COVERAGE

THIS IS A CLAIMS MADE COVERAGE PART. PLEASE READ IT CAREFULLY.

THE INSURED ..................................................................................................................................... 2

INSURING AGREEMENTS .................................................................................................................. 3

DEFINITIONS........................................................................................................................................ 4

THE EXCLUSIONS............................................................................................................................... 9

TERRITORY......................................................................................................................................... 13

LIMITS OF LIABILITY ...................................................................................................................... 13

DEFENSE, SETTLEMENTS AND CLAIM EXPENSES.................................................................. 14

CLAIMS ............................................................................................................................................... 14

EXTENDED REPORTING PERIOD .................................................................................................. 15

OTHER CONDITIONS ....................................................................................................................... 16

**EVANSTON_000026**          Exh. A 027

**INTERLINE**

# SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE COVERAGE

THIS IS A CLAIMS MADE COVERAGE PART. PLEASE READ IT CAREFULLY.

In consideration of the premium paid, the undertaking of the Named Insured to pay the Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the application attached hereto and made a part hereof and the underwriting information submitted on behalf of the Insured, and subject to all the terms, conditions and limitations of this policy, the Company and the Insured agree as follows:

## THE INSURED

The unqualified word "Insured," either in the singular or plural, means:

**A.** The Named Insured which is defined herein as the person(s) or organization(s) stated in Item 1. of the Declarations;

**B.** If the Named Insured is an individual, the person so stated and his/her lawful spouse, but only with respect to his/her conduct of business as a sole proprietor;

**C.** If the Named Insured is a partnership or joint venture, the partnership or joint venture so stated and any partner or member thereof and his/her lawful spouse, but only with respect to the conduct of the partnership or joint venture business;

**D.** If the Named Insured is a limited liability company, the limited liability company so stated, any manager thereof, but only with respect to their duties as manager of the limited liability company and any member thereof, but only with respect to the conduct of the business of the limited liability company;

**E.** If the Named Insured is other than an individual, partnership, joint venture or limited liability company, the organization so stated and any executive officer or director thereof, but only with respect to his/her duties as an executive officer or director of such organization;

**F.** Any person other than an Employee, or any organization while acting as real estate manager for the Named Insured;

**G.** Any Employee, other than either the executive officers of the Named Insured if the Named Insured is an organization other than a partnership, joint venture or limited liability company or any manager of the Named Insured if the Named Insured is a limited liability company, solely while acting on behalf of the Named Insured and within the scope of their duties as such;

provided, however, that coverage afforded to such Employee does not apply to:

**1.** Bodily Injury or Personal and Advertising Injury:

    **a.** To the Named Insured, the Named Insured's partners, the Named Insured's members or to a co-Employee while in the course of their employment or performing duties related to the conduct of the Named Insured's business;

    **b.** To the spouse, child, parent, brother or sister of that co-Employee as a consequence of subparagraph 1.a. hereinabove;

    **c.** For which there is any obligation to share Damages with or repay someone else who must pay Damages because of the injury described in subparagraphs 1.a. and b. hereinabove; or

    **d.** Arising out of his/her providing or failure to provide professional health care services, if the Named Insured is engaged in the business or occupation of providing professional health care services;

**2.** Property Damage to property:

    **a.** Owned, occupied or used by; or

    **b.** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

the Named Insured or any Volunteer Worker or Employee or any partner or member of the Named Insured;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**EVANSTON_000027**

Exh. A 028

**INTERLINE**

**H.**  Any organization which is acquired or formed by the Named Insured, other than a partnership, joint venture or limited liability company, and over which the Named Insured maintains majority ownership, will qualify as a Named Insured if there is no other similar insurance available to that organization;

provided, however, that:

**1.**  Coverage under this provision is afforded only for ninety (90) days from the date the Named Insured acquires or forms such organization, or the end of the Policy Period, whichever is earlier;

**2.**  Coverage A. does not apply to Bodily Injury or Property Damage that occurred before the Named Insured acquired or formed the organization; and

**3.**  Coverage B. does not apply to Personal and Advertising Injury arising out of an offense committed before the Named Insured acquired or formed the organization;

**I.**  Any supervisor, administrator, medical director, department head or head of medical staff solely while acting on behalf of the Named Insured and solely within the scope of their duties as such;

**J.**  Any student enrolled in a training program in connection with the Named Insured's Professional Services solely while acting within the scope of his/her duties as such and at the Named Insured's direction;

**K.**  Any Volunteer Worker of the Named Insured, other than a healthcare provider, solely while acting on behalf of the Named Insured and within the scope of his/her duties as such and at the direction of the Named Insured;

**L.**  The heirs, executors, administrators, assigns and legal representatives of each Insured above in the event of death, incapacity or bankruptcy of such Insured, but only for such Insured's liability as is otherwise covered herein;

**M.**  Any member of a board or committee of the Named Insured, solely for conduct arising out of their duties as a board or committee member and any person who executes a decision or directive from a board or committee of the Named Insured solely while in the course and scope of executing such order or directive.

This Coverage Part does not apply to any Bodily Injury, Property Damage, Occurrence, Personal and Advertising Injury or offense arising out of the conduct of any partnership, joint venture or limited liability company which is not stated in the Declarations as a Named Insured.

## INSURING AGREEMENTS

**A.**  **Coverage A. - Bodily Injury and Property Damage Liability:**  The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, for Bodily Injury or Property Damage caused by an Occurrence;

provided:

**1.**  The entirety of the Bodily Injury or Property Damage and Occurrence happens during the Policy Period or on or after the Retroactive Date stated in the Declarations and before the end of the Policy Period;

**2.**  Such Bodily Injury or Property Damage and Occurrence arises out of only those Specified Products, Goods, Operations or Premises stated in the Declarations;

**3.**  Prior to the effective date of this Coverage Part the Insured had no knowledge such Bodily Injury, Property Damage or Occurrence had occurred in whole or in part, and if any Insured knew prior to the Policy Period that the Bodily Injury, Property Damage or Occurrence had occurred, then any continuation, change or resumption of such Bodily Injury, Property Damage or Occurrence during or after the Policy Period will be deemed to have been known prior to the Policy Period; and

**4.**  Such Bodily Injury or Property Damage, which occurs during the Policy Period and was not, prior to the Policy Period known to have occurred by any Insured, includes any continuation, change or resumption of that Bodily Injury or Property Damage after the end of the Policy Period.

**B.**  **Coverage B. - Personal and Advertising Injury Liability:**  The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during

**EVANSTON_000028**          Exh. A 029

**INTERLINE**

the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, for Personal and Advertising Injury caused by an offense;

provided:

**1.** The entirety of the Personal and Advertising Injury and offense happens during the Policy Period or on or after the Retroactive Date stated in the Declarations and before the end of the Policy Period; and

**2.** Such Personal and Advertising Injury and offense arises out of only those Specified Products, Goods, Operations or Premises stated in the Declarations.

**C.** **Coverage C. – Medical Payments**

The Company will pay medical expenses for Bodily Injury caused by an accident:

**1.** On premises the Named Insured owns or rents;

**2.** On ways next to premises the Named Insured owns or rents; or

**3.** Because of the Named Insured's operations;

provided that:

**a.** The accident takes place in the United States of America, its territories or possessions or Puerto Rico and during the Policy Period;

**b.** The expenses are incurred and reported to the Company within one (1) year of the date of the accident; and

**c.** The injured person submits to examination, at the Company's expense, by physicians of the Company's choice as often as the Company reasonably requires.

The Company will make these payments regardless of fault. The Company will pay reasonable expenses for:

**(i)** First aid administered at the time of an accident;

**(ii)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(iii)** Necessary ambulance, hospital, professional nursing and funeral services.

The Named Insured shall report such expenses to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company.

# DEFINITIONS

**A.** **Advertisement** means a commercial communication, including communications that are published material placed on the Internet or on similar electronic means of communication, that is broadcast or published about the Named Insured's Specified Products, Goods or Operations stated in the Declarations for the purpose of promoting the sale or use of such Specified Products, Goods or Operations; provided, however, only that part of a website that is about the Named Insured's Specified Products, Goods or Operations stated in the Declarations for the purposes of promoting such Specified Products, Goods or Operations is considered an Advertisement.

**B.** **Aircraft Products** means any aircraft whether or not heavier than air, including spacecraft and missiles, and any ground support, guidance, control or communications equipment used in connection therewith, and also includes parts, supplies, or equipment installed in or on or used in connection with aircraft, including tools, training aids, instructions, manuals, blueprints and other data, engineering and other advice, services and labor used in the operation, maintenance or manufacture of Aircraft Products.

**C.** **Auto** means:

**1.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; provided, however, it does not include Mobile Equipment; or

**2.** Any other land motor vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged;

provided, however, Auto does not include Mobile Equipment.

**EVANSTON_000029**                    Exh. A 030

**INTERLINE**

**D.**   **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**E.**   **Claim** means a written notice received by the Insured of:

    **1.**   An intention to hold the Insured responsible for:

        **a.**   A Bodily Injury;

        **b.**   A Property Damage;

        **c.**   A Personal and Advertising Injury;

        **d.**   An Occurrence; or

        **e.**   An offense resulting in a Personal and Advertising Injury;

    involving this Coverage Part; or

    **2.**   The service of suit or institution of arbitration proceedings against the Insured.

**F.**   **Claim Expenses** means reasonable and necessary amounts incurred by the Company, or by the Insured with the prior written consent of the Company, in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, Claim Expenses shall not include:

    **1.**   Salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or

    **2.**   Salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

    Solely for the purposes of liability assumed in an Insured Contract, Claim Expenses incurred by or for a party other than an Insured are deemed to be Damages because of Bodily Injury or Property Damage; provided, however, that:

    **a.**   Liability to such party for, or the cost of, that party's defense has also been assumed in the same Insured Contract; and

    **b.**   Such Claim Expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which Damages to which this insurance applies are alleged.

**G.**   **Damages** means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include:

    **1.**   Punitive or exemplary damages or multiplied portions of damages in excess of actual damages, including trebling of damages;

    **2.**   Taxes, criminal or civil fines, or attorneys' fees of a party other than an Insured or other penalties imposed by law;

    **3.**   Sanctions;

    **4.**   Matters which are uninsurable under the law pursuant to which this Coverage Part shall be construed; or

    **5.**   The return, withdrawal, reduction or restitution or payment of any fees, profits or charges for services or consideration and/or any expenses paid to the Insured for services, products or goods.

    **6.**   The cost of complying with an award or order for declaratory, equitable or injunctive relief or remedy.

**H.**   **Electronic Data** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**I.**   **Employee** means any natural person while in the regular service of the Named Insured in the ordinary course of the Named Insured's business and whom the Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service. Employee includes a Leased Worker but does not include any Temporary Worker or independent contractor.

**EVANSTON_000030**          Exh. A 031

**J.** **Grounding** means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft because of the existence of or alleged existence of a defect, fault or condition in any Aircraft Products.

**K.** **Insured Contract** means:

    **1.** A contract for lease of premises; provided, however, that the portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to the Named Insured or temporarily occupied by the Named Insured with the permission of the owner shall not be an Insured Contract;

    **2.** Any easement or license, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;

    **3.** An obligation, as required by municipal ordinance, to indemnify a municipality, except in connection with work for the municipality;

    **4.** A sidetrack agreement;

    **5.** An elevator maintenance agreement; or

    **6.** That part of any other contract or agreement pertaining to the Named Insured's business under which the Named Insured assumes the tort liability of another party to pay for Bodily Injury or Property Damage to a third party, provided such Bodily Injury or Property Damages is caused, in whole or in part, by the Insured or by any person or organization acting on behalf of the Named Insured; provided, however, Insured Contract shall not include that part of any contract or agreement:

        **a.** That indemnifies a railroad for Bodily Injury or Property Damage arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

        **b.** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

            **(i)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or designs or specifications; or

            **(ii)** Supervision, inspection, failure to supervise or inspect architectural, engineering or surveying services; or

        **c.** Under which the Insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the Insured's rendering or failure to render services of a professional nature, including those listed in subparagraph 6.b. hereinabove or any supervision, inspection, failure to supervise or inspect architectural, engineering or survey services.

**L.** **Leased Worker** means a person leased to the Named Insured by a labor leasing organization, under an agreement between the Named Insured and the labor leasing organization, to perform duties related to the conduct of the Named Insured's business and which are at the Insured's direction. Leased Worker does not include a Temporary Worker.

**M.** **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

    **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **2.** Vehicles maintained for use solely on or next to premises the Named Insured owns or rents;

    **3.** Vehicles that travel on crawler treads;

    **4.** Vehicles, whether self-propelled or not, on which are permanently mounted:

        **a.** Power cranes, shovels, loaders, diggers, or drills; or

        **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **5.** Vehicles not described in 1., 2., 3., or 4. herein above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**EVANSTON_000031**       Exh. A 032

    **b.**  Cherry pickers and similar devices used to raise or lower workers;

**6.**  Vehicles not described in 1., 2., 3., or 4. herein above maintained primarily for purposes other than the transportation of persons or cargo; provided, however, that self-propelled vehicles with the following types of permanently attached equipment are not Mobile Equipment but will be considered Autos:

    **a.**  Equipment designed primarily for:

        **(i)**  Snow removal;

        **(ii)**  Road maintenance, but not construction or resurfacing; or

        **(iii)** Street cleaning;

    **b.**  Cherry pickers and similar devices mounted on Auto or truck chassis and used to raise or lower workers; and

    **c.**  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment;

provided, however, Mobile Equipment does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered Autos.

**N.**  **Named Insured's Products or Goods** means Specified Products or Goods stated in the Declarations, other than real property, that are manufactured, sold, handled or distributed by the Named Insured or by others trading under the Named Insured's name, including any container thereof, other than a vehicle.

Named Insured's Products or Goods includes:

**1.**  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of the Named Insured's Products or Goods; and

**2.**  The providing or failure to provide warnings or instructions.

Named Insured's Products or Goods does not include a vending machine or any other property rented to or located for use of others but not sold.

**O.**  **Named Insured's Work** means:

**1.**  Work or operations performed by or on behalf of the Named Insured for those Specified Operations stated in the Declarations; and

**2.**  Materials, parts or equipment furnished in connection such work or operations.

Named Insured's Work includes:

    **a.**  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of the Named Insured's Work; and

    **b.**  The providing or failure to provide warnings or instructions.

**P.**  **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**Q.**  **Personal and Advertising Injury** means injury, including consequential Bodily Injury, caused by one or more of the following offenses:

**1.**  False arrest, detention or imprisonment;

**2.**  Malicious prosecution;

**3.**  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;

**4.**  Oral or written publication, in the course of the Named Insured's Advertisement, of material that slanders or libels a person or organization or disparages a person's or organization's products, goods, operations or services;

**EVANSTON_000032**        Exh. A 033

5.   Oral or written publication, in the course of the Named Insured's Advertisement, of material that violates a person's right of privacy;

6.   The use of another's advertising idea in the course of the Named Insured's Advertisement; or

7.   Infringing upon another's copyright, trade dress or slogan in the course of the Named Insured's Advertisement.

**R.   Policy Period** means the period from the inception date of this policy to the policy expiration date stated in Item 3. of the Declarations, or the effective date of any earlier cancellation or termination.

**S.   Pollutants** means any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electric, or magnetic irritants or contaminants, including, smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals, or waste. Waste includes medical waste and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

**T.   Products-Completed Operations Hazard** includes Bodily Injury and Property Damage occurring away from premises owned by or rented to the Named Insured and arising out of the Named Insured's Products or Goods or the Named Insured's Work.

1.   Products-Completed Operations Hazard does not include:

   a.   Products or goods that are still in the Named Insured's physical possession; or

   b.   Work that has not yet been completed or abandoned.

2.   The Named Insured's Work shall be deemed completed at the earliest of the following times:

   a.   When all of the work called for under a contract with the Named Insured has been completed;

   b.   When all of the work to be performed at the job site has been completed if the contract with the Named Insured calls for work at more than one job site; or

   c.   When the portion of the work out of which the Bodily Injury, Property Damage or Occurrence arises has been put to its intended use by any person or organization other than another contractor or sub-contractor working on the same project.

3.   Work or operations which may require service, maintenance, correction, repair or replacement, but which are otherwise complete, shall be deemed completed.

4.   The Products-Completed Operations Hazard does not include any Bodily Injury, Property Damage or Occurrence arising out of:

   a.   The transportation of property, unless the Bodily Injury, Property Damage or Occurrence arises out of a condition in or on a vehicle not owned or operated by the Named Insured created by the loading or unloading thereof; or

   b.   The existence of tools, uninstalled equipment or abandoned or unused materials.

**U.   Professional Services** means those services stated in Item 4. of the Declarations.

**V.   Property Damage** means:

1.   Physical injury to or destruction of tangible property, including consequential loss of use thereof; or

2.   Loss of use of tangible property which has not been physically injured or destroyed;

provided, however, any such loss of use is caused by an Occurrence;

Tangible property shall not include Electronic Data.

**W.   Temporary Worker** means any person who is furnished to the Named Insured to substitute for a permanent Employee on leave or to meet seasonal or short-term work load requirements.

**X.   Volunteer Worker** means any person who is not an Employee of the Named Insured and who donates his/her work at the direction of and within the scope of duties determined by the Named Insured and is not paid a fee, salary or other compensation by the Named Insured or by anyone else for such work performed for the Named Insured.

**EVANSTON_000033**       Exh. A 034

**INTERLINE**

## THE EXCLUSIONS

**A.**   With respect to all Coverages, this Coverage Part does not apply to any Claim:

**1.**   Based upon or arising out of:

**a.**   The actual, alleged or threatened discharge, disposal, migration, dispersal, seepage, release or escape of Pollutants; provided, however, this subparagraph shall not apply with respect to:

**(1)**   The Products-Completed Operations Hazard;

**(2)**   Damage, arising out of heat, smoke or fumes from hostile fire at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any Insured;

**b.**   Bodily Injury or Property Damage arising out of the actual, alleged or threatened discharge, disposal, migration, dispersal, seepage, release or escape of Pollutants:

**(1)**   At or from any premises, site or location which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste;

**(2)**   Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any Insured or any person or organization for whom the Insured may be legally responsible; or

**c.**   Any demand, request, direction, order or statutory or regulatory requirement to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or in any way respond to or assess the effects of Pollutants or to pay for or contribute to the costs of undertaking such actions; provided, however, this subparagraph shall not apply to liability for Damages because of Property Damage that the Insured would have in the absence of such demand, request, direction, order or statutory or regulatory requirement;

**2.**   Based upon, arising out of, or in any way involving an act, error or omission in the performance of services of a professional nature rendered or that should have been rendered by the Insured or by any person or organization for whose acts, errors or omissions the Insured is legally responsible;

**3.**   Based upon or arising out of the Insured's activities as a fiduciary under the Employee Retirement Income Security Act of 1974 (ERISA) and its amendments or any regulation or order issued pursuant thereto;

**4.**   Based upon or arising out of any unlawful discrimination by any Insured;

**5.**   Based upon or arising out of any Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate Electronic Data;

**6.**   Based upon or arising out of any violation of:

**a.**   The Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal, state or local statute, law, rule, ordinance or regulation;

**b.**   The CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal, state or local statute, law, rule, ordinance or regulation;

**c.**   The Fair Credit Reporting Act (FCRA) and amendments thereto or any similar or related federal, state or local statute, law, rule, ordinance or regulation, including the Fair and Accurate Credit Transactions Act of 2003 (FACTA); or

**d.**   Any other federal, state or local statute, law, rule, ordinance or regulation that addresses, prohibits or limits the dissemination, sending, transmitting, communicating, printing, disposal, collecting, recording or distribution of information or other material;

**7.**   Based upon or arising out of Bodily Injury or Property Damage arising directly or indirectly out of:

**a.**   War, whether or not declared;

**b.**   Civil war, insurrection, rebellion, revolution or usurped power or action taken by governmental authority in hindering or defending against any of the foregoing; or

**c.**   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

**EVANSTON_000034**            Exh. A 035

INTERLINE

8. Based upon or arising out of the termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, refusal to employ, or other practices or policies related to employment or professional privileges; or

9. Brought under any other Coverage Part of this policy.

Exclusions A.1. and A.7. shall not apply to Property Damage by fire to premises while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises. A Limit of Liability applies to this coverage as described in Section Limits of Liability, Coverage A. - Limit of Liability – Fire Damage.

**B.** With respect to Coverage A., this Coverage Part does not apply to any Claim:

1. Based upon or arising out of Bodily Injury or Property Damage expected or intended from the standpoint of the Insured; provided, however, this exclusion does not apply to Bodily Injury resulting from the use of reasonable force to protect persons or property;

2. Based upon or arising out of Bodily Injury or Property Damage for which the Insured is obligated to pay Damages because of the assumption of liability in any contract or agreement; provided, however, this exclusion shall not apply to liability for damages:

   **a.** That the Insured would have in the absence of the contract or agreement; or

   **b.** Assumed in a contract or agreement that is an Insured Contract; provided, the Bodily Injury and Property Damage occurs subsequent to the execution of the Insured Contract;

3. Based upon or arising out of loss of use of tangible property which has not been physically injured or destroyed resulting from:

   **a.** A delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement; or

   **b.** A defect, deficiency, inadequacy or dangerous condition in the Named Insured's Products or Goods or the Named Insured's Work;

   provided, however, this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's Products or Goods or the Named Insured's Work after such products, goods or work have been put to use by any person or organization other than an Insured, provided such products, goods or work are included in the Specified Products, Goods or Operations stated in the Declarations;

4. Based upon or arising out of Property Damage to:

   **a.** The Named Insured's Products or Goods; or

   **b.** The Named Insured's Work included in the Products-Completed Operations Hazard, arising out of it or any part of it, or for the cost of inspecting, repairing or replacing any defective or allegedly defective product or work or part thereof or for loss of use of any defective or allegedly defective product or work;

5. For Damages for any loss, cost or expense incurred by the Named Insured or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the Named Insured's Products or Goods or the Named Insured's Work or of any property of which such products, goods or work form a part, if such products, goods, work or property are withdrawn from the market or from use because of any known or suspected defect, deficiency, inadequacy or dangerous condition therein;

6. Based upon or arising out of Bodily Injury or Property Damage arising out of ownership, maintenance, operation, use or entrustment to others or loading or unloading of:

   **a.** Any Auto, aircraft or watercraft owned or operated by or rented or loaned to any Insured; or

   **b.** Any other Auto, aircraft or watercraft operated by any person in the course of their employment or activities on behalf of the Named Insured;

   provided, however, this exclusion shall not apply to:

   **(1)** The parking of an Auto on premises owned by, rented to or controlled by the Named Insured or on ways next to such premises, if such Auto is not owned by or rented or loaned to any Insured;

   **(2)** A watercraft while ashore on premises owned by, rented to or controlled by the Named Insured; or

**EVANSTON_000035**          Exh. A 036

(3) A watercraft that is less than twenty-six (26) feet in length, that is not owned by the Named Insured and that is not being used to carry persons or property for a charge;

7. Based upon or arising out of Bodily Injury or Property Damage arising out of:

    **a.** The ownership, maintenance, operation, use, loading or unloading of any Mobile Equipment while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for such contest or activity; or

    **b.** The operation or use of any snowmobile, moped or motorized bicycle, or trailer designed for use therewith;

8. Based upon or arising out of Bodily Injury or Property Damage arising out of the transportation of Mobile Equipment by an Auto owned or operated by or rented or loaned to any Insured;

9. Based upon or arising out of Property Damage to:

    **a.** Property owned, occupied or rented to the Insured;

    **b.** Property loaned to the Insured;

    **c.** Personal property in the care, custody or control of the Insured;

    **d.** That particular part of any property,

        **(1)** Upon which operations are being performed by or on behalf of the Named Insured if the Property Damage arises out of those operations; or

        **(2)** The restoration, repair or replacement of which has been made or is necessary because of faulty workmanship thereon by or on behalf of the Insured; provided, however, this subparagraph shall not apply with respect to Property Damage included in the Products-Completed Operations Hazard;

    **e.** Premises that the Named Insured sells, gives away or abandons, if the Property Damage arises out of any part of those premises; provided, however, this subparagraph shall not apply if the premises are included in the Products-Completed Operations Hazard and were never occupied, rented or held for rental by the Named Insured; or

    **f.** To work performed by the Insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith with respect to the Products-Completed Operations Hazard;

provided, however, Items b., c., and d. of this exclusion shall not apply with respect to liability under a written sidetrack agreement;

10. Based upon or arising out of any obligation of the Insured under any workers' compensation, unemployment compensation or disability benefits law or under any similar law;

11. Based upon or arising out of Bodily Injury to any employee of the Insured arising out of and in the course of employment by the Insured or performing duties related to conduct of the Insured's business or any such Claim brought by or on behalf of the spouse, child, parent, brother, sister or partner of the employee;

this exclusion shall apply:

    **a.** Whether the Insured may be liable as an employer or in any other capacity; and

    **b.** To any obligation to share damages with or repay someone else who must pay damages because of injury;

provided, however, that this exclusion shall not apply with respect to liability assumed by the Insured under an Insured Contract;

12. Based upon or arising out of Bodily Injury or Property Damage for which the Insured may be held liable because of:

    **a.** Causing or contributing to the intoxication of any person;

    **b.** The furnishing of alcoholic beverages to a person under legal drinking age or under the influence of alcohol; or

    **c.** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;

**MESM 5011 08 15**       Includes copyrighted material of Insurance Services Office, Inc.       **Page 11 of 16**
with its permission.

**EVANSTON_000036**       Exh. A 037

**INTERLINE**

provided, however, this exclusion shall apply only if the Named Insured:

(1) Manufactures or distributes alcoholic beverages;

(2) Serves or furnishes alcoholic beverages for a charge whether or not such activity requires a license, is for financial gain or livelihood; or

(3) Serves or furnishes alcoholic beverages without a charge if a license is required for such activity;

13. Based upon or arising out of Aircraft Products including consequential loss of use thereof resulting from Grounding;

14. Based upon or arising out of the Named Insured's Products or Goods or the Named Insured's Work in violation of any law, statute, ordinance, or regulation, Federal, State or Municipal government, or agencies thereof;

15. For Bodily Injury arising out of Personal and Advertising Injury; or

16. Based upon or arising out of Bodily Injury sustained by any patient, person or resident of a facility receiving services of a professional nature or any such Claim brought by or on behalf of the spouse, child, parent, grandparent, brother, sister or partner of such patient, person or resident of a facility.

Exclusions B.3. through B.12. shall not apply to Property Damage by fire to premises while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises. A Limit of Liability applies to this coverage as described in Section Limits of Liability, Coverage A. - Limit of Liability ▬ Fire Damage.

C.   With respect to Coverage B., this Coverage Part does not apply to any Claim:

1. Based upon or arising out of Personal and Advertising Injury caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict Personal and Advertising Injury;

2. Based upon or arising out of Personal and Advertising Injury arising out of the oral or written publication, in any manner, of material, if done by or at the direction of the Insured with the knowledge of its falsity;

3. Based upon or arising out of Personal and Adverting Injury arising out of oral or written publication, in any manner, of material whose first publication took place before the  Retroactive Date stated in the Declarations;

4. Based upon or arising out of Personal and Advertising Injury arising out of any criminal act committed by or at the direction of the Insured;

5. Based upon or arising out of Personal and Advertising Injury arising out of a mistake in advertised price or incorrect description of any product, good or operation;

6. Based upon or arising out of any liability assumed by the Insured in a contract or agreement; provided, however, this exclusion shall not apply to liability an Insured would have in the absence of the contract or agreement;

7. Based upon or arising out of Personal and Advertising Injury arising out of piracy, unfair competition, the infringement of copyright, title, trade dress, slogan, service mark, service name or trademark, trade name, patent, trade secret or other intellectual property right; provided, however, this exclusion shall not apply to Infringing upon another's copyright, trade dress or slogan in the Named Insured's Advertisement;

8. Based upon or arising out of Personal and Advertising Injury arising out of piracy, unfair competition, infringement of title, service mark, service name or trademark, trade name, patent, trade secret or other intellectual property right; provided however, under this exclusion other intellectual property right does not include use of another's advertising idea in the Named Insured's Advertisement;

9. Based upon or arising out of Personal and Advertising Injury arising out of an electronic chatroom or bulletin board the Insured hosts, owns, or over which the Insured exercises control;

10. For any Personal and Advertising Injury committed by any Insured whose business is:

a. Advertising, broadcasting, publishing, or telecasting;

b. Designing or determining content for websites for others; or

c. An Internet access, content, search or service provider;

**EVANSTON_000037**          Exh. A 038

INTERLINE

11. Based upon or arising out of Personal and Advertising Injury arising out of the unauthorized use of another party's name or product in the Named Insured's email address, domain name or metatag, or any similar device to mislead another party's customers or potential customers;

12. Based upon or arising out of a breach of contract; provided, however, this exclusion shall not apply to an implied contract to use another's advertising idea in the Named Insured's Advertisement; or

13. Based upon or arising out of the failure of products, goods or services to conform with any statement of quality or performance made in the Named Insured's Advertisement.

**D.**   With respect Coverage C., the Company will not pay any expenses for Bodily Injury:

1. To any Insured;

2. To a person hired to do work for or on behalf of the Insured or a tenant of the Named Insured;

3. To a person injured on that part of premises owned or rented by the Named Insured that the person normally occupies;

4. To a person, whether or not an employee of an Insured, if benefits for the Bodily Injury are payable or must be provided under any workers' compensation or disability benefits law or under any similar law;

5. To a person injured while taking part in athletics;

6. Included in the Products-Completed Operations Hazard;

7. Excluded under Coverage A.; or

8. To any patient, person or resident of a facility receiving services of a professional nature.

## TERRITORY

The insurance afforded by this Coverage Part applies worldwide, provided the Claim is made in the United States of America, its territories or possessions or Puerto Rico.

## LIMITS OF LIABILITY

**A.**   **Coverage A. - Limit of Liability-Each Occurrence:**  The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims first made against the Insured during the Policy Period or Extended Reporting Period, if exercised, under Coverage A. because of all Bodily Injury or Property Damage sustained by one or more persons or organizations as the result of any one Occurrence shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Occurrence.

**B.**   **Coverage A. - Limit of Liability-Fire Damage:**  The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims, including those subject to the above provision regarding the Coverage A. - Limit of Liability – Each Occurrence, because of Property Damage to premises, while rented to the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises arising out of any one fire, shall not exceed the Limit of Liability stated in the Declarations as applicable to Fire Damage – Any One Fire.

**C.**   **Coverage B. - Limit of Liability-Each Person or Organization:**  The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims under Coverage B. because of all Personal and Advertising Injury sustained by any one person or organization shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Person or Organization.

**D.**   **Coverage C. – Medical Payments:  Limit of Liability–Each Injured Person:**  The total liability of the Company for medical expenses under Coverage C. because of Bodily Injury sustained by any one person shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Injured Person.

**E.**   **Limit of Liability – Coverage Part Aggregate:**  Subject to the above Limits of Liability A., B., C. and D., the total liability of the Company shall not exceed the Coverage Part Aggregate Limit of Liability stated in the Declarations for all Damages and Claim Expenses for Coverage A. and B. arising out of all Claims first made during the Policy Period and the Extended Reporting Period, if exercised and all medical expenses under Coverage C.

**EVANSTON_000038**                Exh. A 039

**F.** **Deductible:** The applicable Deductible amount stated in the Declarations shall be paid by the Named Insured and shall be applicable to each Occurrence under Coverage A. and to each person or organization under Coverage B. and shall include Damages and Claim Expenses, whether or not Damages payments are made.

Such amounts shall, upon written demand by the Company, be paid by the Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Occurrence under Coverage A. or each person or organization under Coverage B. shall not exceed the applicable Deductible amount stated in the Declarations.

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

**G.** **Multiple Insureds, Claims and Occurrences:** Under Coverage A. the inclusion herein of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of Liability applicable to Coverage A. stated in the Declarations. More than one Claim arising out of a single Occurrence or a series of related Occurrences shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Occurrence is made or with regard to written notice given to and accepted by the Company pursuant to Section CLAIMS B., Discovery Clause, on the date within the Policy Period on which such written notice of potential Claim is first received by the Company.

## DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

**A.** **Defense, Investigation and Settlement of Claims:** The Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

   **1.** Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the applicable Deductible. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages and/or Claim Expenses.

   **2.** The Company shall select defense counsel; provided, however, that if the law of the state of the Named Insured's domicile, stated in the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

      **a.** Providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages**,** potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

      **b.** Providing any other reasonable information requested;

      **c.** Providing fully itemized billing on a periodic basis; and

      **d.** Cooperating with the Company and the Insured in resolving any discrepancies;

   And the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be a part of and shall not be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible.

**B.** **Consent to Settlement:** The Company may make such investigation and settlement of any Claim as it deems expedient.

## CLAIMS

**A.** **Claim Reporting Provision:** It is a condition precedent to coverage afforded by this Coverage Part that the Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as

EVANSTON_000039                    Exh. A 040

INTERLINE

practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

**B.** **Discovery Clause:** If during the Policy Period, the Insured first becomes aware of a specific Occurrence or offense which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part, then the Insured may provide written notice as stated in the Notices item of the Declarations to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Occurrence or offense shall be deemed for the purpose of this insurance to have been made on the date on which such written notice is received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

**1.** The description of the specific Occurrence or offense;

**2.** The date on which such Occurrence or offense took place;

**3.** The injury or damage which has or may result from such Occurrence or offense;

**4.** The identity of any injured persons; and

**5.** The circumstances by which the Insured first became aware of such Occurrence or offense.

Subject to the paragraph hereinabove, if during the Policy Period the Insured provides such written notice of a specific Occurrence or offense which is reasonably expected to result in a Claim within the scope of coverage of this policy, the Company at its sole option, may investigate such specific Occurrence or offense. Such matter shall be subject to all terms, conditions and provisions in this policy as applicable to a Claim.

# EXTENDED REPORTING PERIOD

**A.** The Named Insured's right to exercise the Extended Reporting Period under this Coverage Part shall exist solely if the Named Insured also exercises its right to purchase the Extended Reporting Period under all Insuring Agreements in the policy for which an Extended Reporting Period is available.

**B.** If the Named Insured nonrenews this policy in its entirety or cancels this policy in its entirety pursuant to Common Policy Conditions A., Cancellation, or if the Company nonrenews this policy in its entirety or cancels this policy in its entirety pursuant to Common Policy Conditions A., Cancellation, for reasons other than nonpayment of premium or Deductible or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right to exercise the Extended Reporting Period as regards all Coverage Parts included under this policy according to the terms and conditions applicable to the Extended Reporting Period as detailed in the Specified Medical Professions Professional Liability Insurance Coverage Part.

**C.** In the event that the Named Insured exercises the Extended Reporting Period as detailed in Specified Medical Professions Professional Liability Insurance Coverage Part, then such exercise of the Extended Reporting Period shall extend the coverage granted under this Coverage Part to Claims first made against the Insured, during the period of months; as elected by the Named Insured, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, following immediately upon the effective date of such cancellation or nonrenewal, for:

**1.** Bodily Injury or Property Damage which happened on or after the applicable Retroactive Date stated in the Declarations and prior to the effective date of such cancellation or nonrenewal, caused by an Occurrence which happened on or after the applicable Retroactive Date stated in the Declarations and prior to the effective date of such cancellation or nonrenewal and arising from those Specified Products, Goods, Operations or Premises stated in the Declarations and which is otherwise covered by this Coverage Part; or

**2.** Personal and Advertising Injury which happened on or after the applicable Retroactive Date stated in the Declarations and prior to the effective date of such cancellation or nonrenewal, caused by an offense which

EVANSTON_000040          Exh. A 041

happened on or after the applicable Retroactive Date stated in the Declarations and prior to the effective date of such cancellation or nonrenewal and arising from those Specified Products, Goods, Operations or Premises stated in the Declarations and which is otherwise covered by this Coverage Part.

## OTHER CONDITIONS

**A.** **Prevention of Loss:**  In the event of an Occurrence or an offense involving the Specified Products, Goods, Operations or Premises stated in the Declarations and covered by this Coverage Part, the Insured shall promptly, at his/her expense, take all reasonable steps to prevent other Bodily Injury, Property Damage or Personal and Advertising Injury from arising out of the same or similar conditions.

**B.** **Other Insurance:**  With respect to Coverage C., Common Policy Conditions E. Other Insurance, shall not apply.

**C.** **Reporting of Changes in Specified Products, Goods, Operations and Premises:**  The premium charged for this Coverage Part is based on those Specified Products, Goods, Operations and Premises stated in the Declarations and identified in the underwriting information submitted to the Company on behalf of the Insured at the time of policy inception. The Insured shall report promptly to the Company any changes in those Specified Products, Goods, Operations or Premises stated in the Declarations as described below, and the Company shall have the right to adjust the premium and/or Deductible(s) for such changes, based on its sole assessment of the additional exposure(s) presented.

Changes to report:

**1.** Any changes to manufacturing or servicing premises requiring structural alterations, or acquisition of additional manufacturing or servicing premises;

**2.** Any changes in manufacturing or servicing operations which is likely to result in an annual increase in payrolls of twenty-five percent (25%) or more;

**3.** Any change in operations which are not accurately described by the description as stated in the Declarations.

This Coverage Part shall apply to only those Specified Products, Goods, Operations and Premises stated in the Declarations, irrespective of any changes reported.

**EVANSTON_000041**                   Exh. A 042

**INTERLINE**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CERTIFIED ACTS OF TERRORISM ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INSURANCE COVERAGE PART – OCCURRENCE COVERAGE
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE COVERAGE PART - OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that, with respect to any Claim otherwise covered hereunder, this Coverage Part shall not exclude any Claim based upon, arising out of, or in any way involving any Certified Act of Terrorism.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance of Act. The federal Terrorism Risk Insurance of Act sets forth the following criteria for a Certified Act of Terrorism:

1.  The act resulted in insured losses in excess of $5 million in the aggregate attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Calendar Year and the Company has met the Company's deductible under the Terrorism Risk Insurance Act, the Company shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such cases insured losses up to that amount are subject to pro rata allocation in accordance with the procedures established by the Secretary of Treasury.

All other terms and conditions remain unchanged.

EIC 4638 01 15

Page 1 of 1

Exh. A 043

INTERLINE



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ASBESTOS EXCLUSION

In consideration of the premium paid, it is hereby understood and agreed that the insurance provided by this policy shall not apply to any Claim, loss or expense caused by, resulting from or arising out of asbestos, asbestos fibers or any product or material containing asbestos in any form, under any theory of liability whatsoever.

It is further agreed that the Company shall have no duty to defend or to pay or reimburse for any fees, costs or expenses in the investigation or defense of any Claim excluded herein.

*All other terms and conditions remain unchanged.*

**EIC 832-01 10 02**                                                                                          **Page 1 of 1**

**EVANSTON_000043**                              Exh. A 044



**MARKEL®**

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SERVICE OF SUIT - CALIFORNIA

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Todd Croutch, Fraser Watson Croutch LLP, 100 West Broadway, Suite 650, Glendale, CA 91210-1201 and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this policy, and hereby designates the above-named as to whom the said officer is authorized to mail such process or a true copy thereof.

Pursuant to Section 1772, et seq., of the California Insurance Code, a surplus line insurer may be sued upon any cause of action arising in this state under any surplus line insurance contract made by it, or any evidence of insurance issued or delivered by the surplus line broker, pursuant to the procedures set forth in Sections 1610 to 1620, inclusive.

**EVANSTON_000044**                    Exh. A 045



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MINIMUM EARNED PREMIUM ENDORSEMENT

In the event that this policy is cancelled by the Named Insured who is authorized to act on behalf of all insureds, the policy premium is subject to a minimum earned premium of 25%.

All other terms and conditions remain unchanged.

**MEIL 5200-25% 07 04**                                                                                       **Page 1 of 1**

**EVANSTON_000045**                    Exh. A 046

POLICY NUMBER: SM931910

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LONGER DURATION EXTENDED REPORTING PERIOD AVAILABILITY

This endorsement modifies insurance provided under the following:

PHYSICIANS, SURGEONS, DENTISTS AND PODIATRISTS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED ERRORS AND OMISSIONS LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART - CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that in addition to the availability of the Extended Reporting Period for the period of months stated in Item 8. of the Declarations, an Extended Reporting Period of the following duration shall also be available:

48 months;
60 months;
72 months; or
84 months.

The Named Insured must make a written request for the longer duration Extended Reporting Period received by the Company within 10 days after the end of the Policy Period. The written request must specify from the options stated above which period of Extended Reporting Period is requested. The Company will determine the additional premium to be charged for such Extended Reporting Period.

The Company will provide to the Named Insured in writing the amount of the additional premium for an Extended Reporting Period of the duration specified within 10 days of receipt of the Named Insured's written request.

All other terms and conditions of the Section Extended Reporting Period shall apply with regard to the Named Insured's exercise of any such longer duration Extended Reporting Period.

All other terms and conditions remain unchanged.

**MEIL 5229 09 10**                                                                 **Page 1 of 1**

Exh. A 047



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED ENDORSEMENT FOR LANDLORDS, SPONSORS OR LESSORS - APPLICABLE TO SPECIFIED GENERAL LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that:

1. Section THE INSURED, solely as pertains to this Coverage Part, is amended by the addition of the following:

    Whenever used in this Coverage Part, the unqualified word Insured shall also mean Additional Insured.

2. **Additional Insured**, whenever used in this endorsement, shall mean the following:

    Any landlord, owner, or property manager of the Designated Premises; or any tradeshow or convention sponsor or operator; or any lessor of equipment.

3. **Designated Premises**, whenever used in this endorsement, shall mean the following:

    All premises leased or rented to the Named Insured, premises temporarily occupied by the Named Insured for a tradeshow or convention and/or equipment leased to the Named Insured.

4. Coverage provided to any Additional Insured as defined herein shall apply solely:

    **(a)** For Claims arising out of the Named Insured's occupancy of, or failure to maintain, the Designated Premises, but solely with respect to the Specified Products, Goods or Operations of the Named Insured and only if liability for such Claim is determined to be solely the negligence or responsibility of the Named Insured; and

    **(b)** For Occurrences at, on or upon that portion of the Designated Premises which is occupied by the Named Insured and taking place during the term of the Named Insured's lease/occupancy of such Designated Premises.

All other terms and conditions remain unchanged.

**MESM 1005 08 15**                                                                                      **Page 1 of 1**



POLICY NUMBER: SM931910

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED ENDORSEMENT – GENERAL LIABILITY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – OCCURRENCE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

**1.**     Section The Insured is amended to include as an additional Insured the following:

any Additional Insured shown in the Schedule below.

**2.**     Coverage provided to any Additional Insured as scheduled herein shall apply solely with respect to the Specified Products, Goods, Operations and Premises of the Named Insured stated in the Declarations.

**3.**     No coverage shall be afforded to the Additional Insured for Bodily Injury, Property Damage, Personal and Advertising Injury to any Employee or to any obligation of the Additional Insured to indemnify another because of Damages arising out of such injury.

**4.**     Where no coverage shall apply herein for the Named Insured, no coverage or defense shall be afforded to the Additional Insured.

### SCHEDULE

Additional Insured:     Regional Center of Orange County, Irvine Unified School District, Orange Unified School District, Newport-Mesa Unified School District, Hockinson School District, to whom the Named Insured is obligated by valid written contract to provide coverage as an additional insured to such person or organization

All other terms and conditions remain unchanged.

**MESM 1006 08 15**



POLICY NUMBER: SM931910

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF GENERAL LIABILITY COVERAGE A. - HIRED AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART– CLAIMS MADE COVERAGE

**THIS ENDORSEMENT PROVIDES OCCURRENCE COVERAGE**

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

**1.** Item 5.B. of the Declarations, the Coverage Parts Limits of Liability column, is amended by the addition of the following:

$1,000,000 Coverage A. Hired Auto and Non-Owned Auto Liability Each Occurrence

$1,000,000 Coverage A. Hired Auto and Non-Owned Auto Liability Aggregate

**2.** Solely with respect to Hired Auto and Non-Owned Auto Liability, to which Coverage A. applies, Section THE INSURED is deleted and replaced with the following:

**THE INSURED**

The unqualified word "Insured," either in the singular or plural, means:

**A.** The Named Insured herein defined as the person(s) or organization(s) stated in Item 1. of the Declarations;

**B.** Any person using a Hired Auto with the Named Insured's permission;

**C.** With respect to a Non-Owned Auto, any partner or executive officer of the Named Insured, but only while such Non-Owned Auto is being used in the Named Insured's business; or

**D.** Any other person or organization, but only with respect to their liability because of acts or omissions of an Insured under A., B. or C. hereinabove;

And none of the following is an "Insured":

**1.** Any person engaged in the business of his or her employer for Bodily Injury to any co-employee of such person injured in the course of employment;

**2.** Any partner or executive officer with respect to any Auto owned by such partner or officer or a member of his or her household;

**3.** The owner or lessee (of whom the Named Insured is a sublessee) of a Hired Auto or the owner of a Non-Owned Auto or any agent or Employee of any such owner or lessee; and

**4.** Any person or organization with respect to the conduct of any current or past partnership or joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**EVANSTON_000049**

Exh. A 050

**3.** Section INSURING AGREEMENTS A., Coverage A. - Bodily Injury and Property Damage Liability, is amended by the addition of the following:

**Hired Auto and Non-Owned Auto Liability:** The insurance provided under Coverage A., Bodily Injury and Property Damage Liability, shall also pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Bodily Injury and Property Damage arising out of the:

   **1.** Maintenance or use of a Hired Auto by the Insured in the course of the Named Insured's business; or

   **2.** Use of a Non-Owned Auto by any person other than the Named Insured in the course of the Named Insured's business; and

caused by an Occurrence, provided:

   **a.** The entirety of the Bodily Injury or Property Damage and Occurrence happens during the Policy Period;

   **b.** Such Bodily Injury or Property Damage and Occurrence arises out of only those Specified Products, Goods, Operations or Premises stated in the Declarations;

   **c.** Prior to the effective date of this Coverage Part the Insured had no knowledge such Bodily Injury, Property Damage or Occurrence had occurred in whole or in part, and if any Insured knew prior to the Policy Period that the Bodily Injury, Property Damage or Occurrence had occurred, then any continuation, change or resumption of such Bodily Injury, Property Damage or Occurrence during or after the Policy Period will be deemed to have been known prior to the Policy Period;

   **d.** Such Bodily Injury or Property Damage, which occurs during the Policy Period and was not, prior to the Policy Period known to have occurred by any Insured, includes any continuation, change or resumption of that Bodily Injury or Property Damage after the end of the Policy Period; and

   **e.** Such Bodily Injury, Property Damage or Occurrence will be deemed to have been known to have occurred at the earliest of any Insured:

     **(1)** Reporting all, or any part, of such Bodily Injury, Property Damage or Occurrence to the Company or any other insurer;

     **(2)** Receiving of a Claim because of such Bodily Injury, Property Damage or Occurrence; or

     **(3)** Becoming aware by any other means that such Bodily Injury, Property Damage or Occurrence has occurred or has begun to occur.

**4.** Solely with respect to Hired Auto and Non-Owned Auto Liability, to which Coverage A. applies, Section DEFINITIONS K., Insured Contract, is deleted and replaced with the following:

   **K. Insured Contract** means that part of any contract or agreement pertaining to the Named Insured's business, as regards the rental or lease, by the Named Insured or any Employee, of any Auto; provided, however, Insured Contract shall not include that part of any contract or agreement that obligates the Named Insured or any Employee to pay for Property Damage for any Auto rented or leased by the Named Insured or any Employee.

**5.** Solely with respect to Hired Auto and Non-Owned Auto Liability, to which Coverage A. applies, Section DEFINITIONS is amended by the addition of the following:

**Hired Auto** means any Auto the Named Insured leases, hires, rents or borrows; provided, however, Hired Auto shall not include: (1) any Auto the Named Insured leases, hires or rents under a lease or rental agreement of one hundred and eighty (180) days or more; or (2) any Auto the Named Insured leases, hires or borrows from any partner, manager, member or executive officer of the Named Insured.

**Non-Owned Auto** means any Auto the Named Insured does not own, lease, hire, rent or borrow which is used in connection with the Named Insured's business and shall include Autos owned by a partner, manager, member or executive officer of the Named Insured or an Employee, or members of their households, but only while used in the Named Insured's business.

**6.** Solely with respect to Hired Auto and Non-Owned Auto Liability, to which Coverage A. applies, Section THE EXCLUSIONS B. 9. is deleted and replaced with the following:

EVANSTON_000050

Exh. A 051

**9.** Any Claim based upon or arising out of Property Damage to:

    **a.** Property owned or being transported by or rented or loaned to the Insured; or

    **b.** Property in the care, custody or control of the Insured;

**7.** Solely with respect to Hired Auto and Non-Owned Auto Liability, to which Coverage A. applies, Section THE EXCLUSIONS B.3., B.4., B.6., B.7., B.8., B.11. and B.12. are deleted.

**8.** Solely with respect to Hired Auto and Non-Owned Auto Liability, to which Coverage A. applies, Section LIMITS OF LIABILITY A. is amended by the addition of the following:

Solely with respect to Hired Auto and Non-Owned Auto Liability, the total liability of the Company for the combined total of Damages and Claim Expenses because of all Bodily Injury and Property Damage as the result of any one Occurrence shall not exceed the Hired Auto and Non-Owned Auto Liability Each Occurrence Limit of Liability stated in Item 5.B. the Declarations.

**9.** Section LIMITS OF LIABILITY E. is deleted and replaced with the following:

    **E.** **Limit of Liability – Aggregates:**

        **1.** **Limit of Liability – Hired Auto and Non-Owned Auto Liability Aggregate:**  Solely with respect to Hired Auto and Non-Owned Auto Liability, to which Coverage A. applies, subject to the above described Limit of Liability A. as stated in the Declarations, the total liability of the Company for the combined total of Damages and Claim Expenses for all Hired Auto and Non-Owned Auto Liability to which Coverage A. applies, shall not exceed the Hired Auto and Non-Owned Auto Liability Aggregate Limit of Liability stated in Item 5.B. the Declarations.

        **2.** **Limit of Liability – Coverage Part Aggregate:**  Subject to the above Limits of Liability A., B., C., D. and E.1., the total liability of the Company shall not exceed the Coverage Part Aggregate Limit of Liability as stated in the Declarations for all Damages and Claim Expenses for Coverage A. and B., arising out of all Claims first made during the Policy Period and the Extended Reporting Period, if exercised, including all Damages and Claim Expenses for Hired Auto and Non-Owned Auto Liability to which Coverage A. applies, and all medical expenses under Coverage C.

**10.** The Section LIMITS OF LIABILITY G. is deleted and replaced with the following:

    **G.** **Multiple Insureds, Claims and Occurrences:**  Under Coverage A. the inclusion herein of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of Liability applicable to Coverage A. stated in the Declarations.

    Solely with respect to the coverage afforded hereunder other than the Hired Automobile and Non-Owned Automobile Liability: More than one Claim arising out of a single Occurrence or a series of related Occurrences shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Occurrence is made or with regard to written notice given to and accepted by the Company pursuant to Section CLAIMS B., Discovery Clause, on the date within the Policy Period on which such written notice of potential Claim is first received by the Company.

    Solely with respect to Hired Auto and Non-Owned Auto Liability, to which Coverage A. applies: regardless of the number of Insureds; Claims made; or persons or organizations making Claims; Hired Autos, Non-Owned Autos or vehicles involved in a single Occurrence;, the total liability of the Company for the combined total of Damages and Claim Expenses because of all Bodily Injury and Property Damage as the result of any one Occurrence shall not exceed the Hired Auto and Non-Owned Auto Liability Each Occurrence Limit of Liability stated in the Declarations.

**11.** Section CLAIMS A., Claim Reporting Provision, is deleted and replaced as follows:

    **A.** **Occurrence and Claim Reporting Provision:**

        **1.** Solely with respect to Hired Automobile and Non-Owned Automobile Liability to which Coverage A. applies, the Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Occurrence that happens during the Policy Period which may give rise to a Claim against the Insured.

EVANSTON_000051        Exh. A 052

**2.** Solely with respect to the coverage afforded hereunder other than the Hired Automobile and Non-Owned Automobile Liability, the Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

**3.** In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

**12.** Section CLAIMS B., Discovery Clause and Section EXTENDED REPORTING PERIOD do not apply with respect to the coverage afforded by Coverage A. for Hired Automobile and Non-Owned Automobile Liability.

**13.** Solely with respect to Hired Auto and Non-Owned Auto Liability, to which Coverage A. applies, Section OTHER CONDITIONS B., Other Insurance, is amended by the addition of the following:

With respect to Hired Auto and Non-Owned Auto Liability, to which Coverage A. applies, COMMON POLICY CONDITIONS E. Other Insurance, shall not apply and such coverage shall be excess over any primary insurance covering any Hired Auto or any Non-Owned Auto.

All other terms and conditions remain unchanged.

**EVANSTON_000052**                      Exh. A 053

POLICY NUMBER: SM931910

**MARKEL**®

# EVANSTON INSURANCE COMPANY

## DATABREACH<sup>SM</sup> COVERAGE PARTS ENDORSEMENT

This endorsement adds to the insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE

In consideration of the premium paid, it is understood and agreed that the coverages afforded by this Endorsement are subject to the terms, conditions and limitations of this policy, except to the extent that such terms, conditions and limitations are modified herein. Solely with respect to the coverages afforded by this Endorsement, the policy is amended as follows:

**Claims Made and Reported Coverage:** With regard to DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part, the coverage afforded by this Endorsement is limited to liability for only those Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company during the Policy Period or the Extended Reporting Period, if exercised, or within sixty (60) days after the expiration of the Policy Period or the Extended Reporting Period, if exercised.

**Notice:** DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part, of this Endorsement contains provisions that reduce the limits of liability stated in the Endorsement by the costs of legal defense.

The limits of liability applicable to the coverage parts provided under this Endorsement are in addition to, and do not erode the limits of liability provided under the Professional Liability coverage afforded in the policy to which this endorsement attaches.

Please read this Endorsement carefully.

1.   Section THE INSURED is deleted and replaced with the following:

**THE INSURED**

The unqualified word "Insured" wherever used in this endorsement either in the singular or plural, means:

**A.** The Named Insured herein defined as the person(s) or organization(s) stated in Item 1. of the Declarations.

2.   Section INSURING AGREEMENTS is amended by the addition of the following:

**DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part – Claims Made and Reported Coverage:**

The Company shall pay on behalf of the Insured, all sums which the Insured shall become legally obligated to pay as Damages and Regulatory Fines both of which are a result of a Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company during the Policy Period or the Extended Reporting Period, if exercised, or within sixty (60) days after the expiration of the Policy Period or Extended Reporting Period, if exercised, by reason of an Unauthorized Access or a Potential Unauthorized Access, provided:

1.   The entirety of the Unauthorized Access or the discovery of the Potential Unauthorized Access happens during the Policy Period or on or after 07/25/2005 and before the end of the Policy Period; and

2.   Prior to the effective date of this policy the Named Insured or any past or current principal, partner, officer, director, trustee, shareholder, Employee, manager or member of the Named Insured had no knowledge of such Unauthorized Access, Potential Unauthorized Access or any computer security incident, intrusion, breach, compromise, theft, loss or use of the Named Insured's Electronic Communications System which may have led a reasonable person in such party's position to conclude that a Claim was likely.

MESM 2034 08 15                                                                                          Page 1 of 12

Exh. A 054

**DataBreach<sup>SM</sup> COVERAGE B. - Data Breach Loss to Insured Coverage Part – Occurrence Coverage:**

The Company shall indemnify the Named Insured for the amount of Loss which results directly from an Unauthorized Access which occurs during the Policy Period and is reported to the Company pursuant to Section CLAIMS, LOSS AND EXPENSES B., provided:

1.  Prior to the effective date of this policy the Named Insured or any past or current principal, partner, officer, director, trustee, shareholder, Employee, manager or member of the Named Insured had no knowledge that such Unauthorized Access had occurred in whole or in part, and if such party knew prior to the Policy Period that the Unauthorized Access had occurred, then any continuation, change or resumption of such Unauthorized Access during or after the Policy Period will be deemed to have been known prior to the Policy Period;

2.  Unauthorized Access, which occurs during the Policy Period and was not, prior to the Policy Period known to have occurred by the Named Insured or any past or current principal, partner, officer, director, trustee, shareholder, Employee, manager or member of the Named Insured, includes any continuation, change or resumption of that Unauthorized Access after the end of the Policy Period; and

3.  Unauthorized Access will be deemed to have been known to have occurred at the earliest of the Named Insured or any past or current principal, partner, officer, director, trustee, shareholder, Employee, manager or member of the Named Insured:

    (a) Reporting all, or any part, of the Unauthorized Access to the Company, any other insurer or any insurance representative;

    (b) Incurring Loss or Breach Mitigation Expense because of the Unauthorized Access; or

    (c) Becoming aware by any other means that Unauthorized Access has occurred or has begun to occur.

**DataBreach<sup>SM</sup> COVERAGE C. - Breach Mitigation Expense Coverage Part – Occurrence Coverage:** The Company shall, subject to the prior written consent of the Company, reimburse the Named Insured for the reasonable cost actually incurred by the Named Insured for Breach Mitigation Expense which results directly from an Unintentional Data Compromise which occurs during the Policy Period and is reported to the Company pursuant to Section CLAIMS, LOSS AND EXPENSES C., provided:

1.  The entirety of the Unintentional Data Compromise occurs during the Policy Period; and

2.  Prior to the effective date of this policy the Named Insured or any past or current principal, partner, officer, director, trustee, shareholder, Employee, manager or member of the Named Insured had no knowledge such Unintentional Data Compromise of:

    a.  The Named Insured's Electronic Communications System; or

    b.  The Electronic Communications System of a third party responsible for storing and securing the data of the Named Insured;

    had occurred in whole or in part, which may have led a reasonable person in such party's position to conclude that incurring such expenses was likely, and if any such party knew prior to the Policy Period that such Unintentional Data Compromise had occurred, then any continuation, change or resumption of such Unintentional Data Compromise during or after the Policy Period will be deemed to have been known prior to the Policy Period; and

3.  Unintentional Data Compromise will be deemed to have been known to have occurred at the earliest of any Insured:

    a.  Reporting all, or any part, of an Unauthorized Access or Potential Unauthorized Access to the Company, any other insurer or any insurance representative;

    b.  Incurring Loss or Breach Mitigation Expense because of an Unauthorized Access or Potential Unauthorized Access; or

    c.  Becoming aware by any other means that an Unintentional Data Compromise has occurred or has begun to occur.

The Named Insured must submit to the Company satisfactory written proof of payment of such costs within one (1) year after the expiration or cancellation of this policy.

**EVANSTON_000054**                          Exh. A 055

If such expenses as are reimbursable under this DataBreach<sup>SM</sup> COVERAGE C. - Breach Mitigation Expense Coverage Part become part of a judgment, award or settlement, such expenses shall not be subject to coverage under DataBreach<sup>SM</sup> COVERAGE C. - Breach Mitigation Expense Coverage Part.

**3.**   Section DEFINITIONS is deleted and replaced with the following:

**DEFINITIONS**

**A.**   **Authority** means any agency of:

    **1.**   A federal, state or local government of the United States of America, its territories or possessions or Puerto Rico;

    **2.**   A federal, provincial or local government of Canada;

    **3.**   The government of the European Union (EU) or any member nation; or

    **4.**   The PCI Security Standards Council;

any of which is charged with the administration or enforcement of laws or regulations relating to the use, transfer or storage of electronic communications or data storage systems.

**B.**   **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these; provided, however, Bodily Injury does not include humiliation or the infliction of emotional distress arising solely from an Unauthorized Access or Potential Unauthorized Access.

**C.**   **Breach Mitigation Expense** means expenses incurred by the Insured with the prior written consent of the Company for:

    **1.**   The services of a public relations professional, or other publicity expenses that are recommended by a public relations professional to respond to any actual adverse publicity in the media, that is the result of an Unauthorized Access or Potential Unauthorized Access;

    **2.**   Expenses, including but not limited to patient notification and related legal fees, that are incurred to comply with a Security Breach Notice Law and that are the result of an Unauthorized Access or Potential Unauthorized Access; and

    **3.**   Expenses associated with voluntarily providing credit monitoring services to patients and individuals effected by an Unauthorized Access or Potential Unauthorized Access.

**D.**   **Claim** means the Insured's receipt of:

    **1.**   A written demand for damages;

    **2.**   The service of suit or institution of arbitration proceedings against the Insured; or

    **3.**   A written notice of the institution of a charge against the Insured by any Authority or of any administrative proceeding initiated by an Authority including any investigation, conciliation meeting or hearing;

all as a result of an Unauthorized Access or Potential Unauthorized Access.

**E.**   **Claim Expenses** means reasonable and necessary amounts incurred by the Company, or by the Insured with the prior written consent of the Company, in the defense of that portion of any Claim for which coverage is afforded under this Endorsement, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, that Claim Expenses shall not include:

    **1.**   Salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or

    **2.**   Salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

**F.**   **Damages** means the monetary portion of any judgment, award or settlement, including punitive damages where insurable; provided, however, Damages shall not include:

    **1.**   Multiplied portions of damages in excess of actual damages, including trebling of damages;

EVANSTON_000055                    Exh. A 056

2. The cost of any modifications or changes to the Insured's security measures, procedures, software or hardware required or agreed to by the Insured to satisfy a judgment, award or settlement;

3. Any cost required to repair, build or modify property to comply with any award by a court, administrative order, arbitration award or any similar judgment;

4. Taxes, criminal or civil fines, or attorneys' fees of a party other than an Insured, other penalties imposed by law or Regulatory Fines;

5. Sanctions;

6. Matters which are uninsurable under the law pursuant to which this Endorsement shall be construed; or

7. The return, withdrawal, reduction, restitution or payment of any fees, profits or charges for services or consideration and/or any expenses paid to the Insured.

**G.** **Electronic Communications System** means any wired, wireless, radio, electromagnetic, photo-optical or photo-electronic facility for the transmission of electronic communications; any electronic data processing system, network or related electronic equipment for the storage of such communications; and any computer.

**H.** **Employee** means any natural person while in the regular service of the Named Insured in the ordinary course of the Named Insured's business and whom the Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service. Employee includes a Leased Worker but does not include any Temporary Worker or independent contractor.

**I.** **Leased Worker** means any natural person leased to the Named Insured by a labor leasing organization, under an agreement between the Named Insured and the labor leasing organization, to perform duties related to the conduct of the Named Insured's business and which are at the Insured's direction. Leased Worker does not include a Temporary Worker.

**J.** **Forensic Expense** means reasonable and necessary costs incurred by the Named Insured to engage the services of a third party computer security expert to determine the existence and cause of any Unauthorized Access.

**K.** **Interrelated Unauthorized Accesses** means Unauthorized Access(es) and/or Potential Unauthorized Access(es) which are logically or causally connected by reason of any common fact, incident, circumstance, situation, or any computer security incident, intrusion, breach, compromise, theft, loss or use of the Named Insured's Electronic Communications System.

**L.** **Loss** means:

1. Reasonable and necessary costs incurred by the Named Insured to restore with due diligence and dispatch the Named Insured's Electronic Communications System to the condition that existed prior to an Unauthorized Access, including reconstruction of programs, electronic data and media which form a part of the Named Insured's Electronic Communications System; and

2. Forensic Expense;

provided, however, Loss shall not include: (a) any cost or charges associated with building, modifying or upgrading the Named Insured's Electronic Communications System, or any software, security measures or procedures; (b) any cost required to repair, build or modify tangible property to comply with any award or order by a court, an Authority, arbitration or any similar proceeding; (c) any loss of reputation of the Named Insured or loss of customer confidence in the Named Insured or the value imputed to such loss; (d) expenses incurred by the Insured in establishing the amount of any Loss covered under this Endorsement; or (e) loss of business income.

**M.** **Policy Period** means the period stated from the inception date of this policy to the policy expiration date stated in in Item 3. of the Declarations, or the effective date of any earlier cancellation or termination.

**N.** **Potential Unauthorized Access** means the threat or potential threat of an Unauthorized Access arising from a theft or loss of any component of the Named Insured's Electronic Communications System.

**O.** **Pollutants** mean any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals or waste. Waste includes medical waste and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

**EVANSTON_000056**                                    Exh. A 057

**P.**   **Private Data** means data containing an individual's:

1. Drivers license or other state-issued identification number; social security number; unpublished telephone number; savings account, checking account, credit card or debit card number each when in combination with the security code, access code, password or pin for such account or card number;

2. "Nonpublic personal information" as defined in the Gramm-Leach Bliley Act of 1999, as amended, and regulations issued pursuant thereto;

3. "Protected healthcare information" as defined in the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as amended, and regulations issued pursuant thereto, and medical and healthcare information;

4. Private personal information as defined under a Security Breach Notice Law; and

5. Private personal information as defined under the law of a country other than the United States, which law is intended to provide for the protection of such private personal information;

not including any lawfully available data accessible by the general public.

**Q.**   **Property Damage** means physical injury to tangible property, including all resulting loss of use of that property or loss of use of tangible property that is not physically injured; provided, however, damage to, corruption of or inability to access data, software and computer networks shall not be considered to be loss of use of tangible property.

**R.**   **Regulatory Fines** means civil fines and penalties assessed against the Insured by an Authority as a result of a Claim subject to coverage under DataBreach[SM] COVERAGE A. - Data Breach and Privacy Liability Coverage Part of this Endorsement.

**S.**   **Security Breach Notice Law** means any law, statute or regulation within the United States of America, its territories or possessions, Puerto Rico or Canada requiring the Named Insured to notify individuals of the compromise or possible compromise of the security of their confidential information in the Named Insured's care, custody or control and the European Union (EU) Data Protection Act of 1995.

**T.**   **Temporary Worker** means any natural person who is furnished to the Named Insured to substitute for a permanent Employee on leave or to meet seasonal or short-term work load requirements.

**U.**   **Unauthorized Access** means a breach of the Named Insured's security measures, systems, procedures, or stated privacy policy, or any intentional violation, interception, or use or misuse of the Named Insured's Electronic Communications System, whether or not for profit or gain, by any person, without the permission, knowledge or ratification of the Insured. Unauthorized Access also includes:

1. Access to the Named Insured's Electronic Communications System that is with the Insured's permission where such permission is the result of fraud or deception;

2. Use of the Named Insured's Electronic Communications System by a party authorized by the Insured to use such system, who does so for an unauthorized purpose;

3. The introduction of programs into the Named Insured's Electronic Communications System which contain fraudulent or destructive instructions or code including any inadvertent transmission of such programs to a third party;

4. A credible threat or an extortion demand received by the Named Insured threatening or portending loss, injury or damage to:

   a. The Named Insured's Electronic Communications System, including programs, electronic data and media which form a part of the Named Insured's Electronic Communications System; or

   b. Money, securities, bonds or similar financial instruments, solely to the extent that record of such is maintained in digital or electronic format on the Named Insured's Electronic Communications System;

   for the purpose of extorting money or other valuable consideration from the Named Insured; and

5. Failure to prevent a denial of service attack on the Named Insured's Electronic Communications System or to prevent the use of the Named Insured's Electronic Communications System by an unauthorized user or code to launch a denial of service attack on a third party;

**EVANSTON_000057**                                       Exh. A 058

**6.** Solely with regard to:

    **a.** DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part; and

    **b.** DataBreach<sup>SM</sup> COVERAGE C. - Breach Mitigation Expense Coverage Part;

    the theft or loss of any paper records; and

**7.** Solely with regard to DataBreach<sup>SM</sup> COVERAGE C. - Breach Mitigation Expense Coverage Part:

The failure of any third party to prevent the unauthorized viewing, copying or distribution of Private Data which the Named Insured has entrusted to such party under a written contract or agreement that specifically requires such party to protect the confidentiality of the Private Data so entrusted.

**V.**   **Unintentional Data Compromise** means any computer security incident, intrusion, breach, compromise, theft, loss or misuse of the Private Data of the Named Insured's patient(s) and/or of any past or current principal, partner, officer, director, trustee, shareholder, Employee, manager or member of the Named Insured.

**W.**   **Volunteer Worker** means any natural person who is not an Employee of the Named Insured and who donates his/her work at the direction of and within the scope of duties determined by the Named Insured and is not paid a fee, salary or other compensation by the Named Insured or by anyone else for such work performed for the Named Insured.

**4.** Section THE EXCLUSIONS is deleted and replaced with the following:

## THE EXCLUSIONS

**A.** With respect to all Coverage Parts provided by this Endorsement, this Endorsement does not apply to any Claim, Loss or Breach Mitigation Expense:

**1.** Caused by access to the Named Insured's Electronic Communications System by any government, governmental agency or subagency, or any agents thereof while acting on behalf of such entity;

**2.** Due to riot, civil commotion, war, insurrection or usurped power;

**3.** Based upon or arising out of Bodily Injury or Property Damage;

**4.** Based upon or arising out of liability of others assumed by the Insured under any contract or agreement; provided, however, this exclusion shall not apply to liability an Insured would have in the absence of such contract or agreement;

**5.** Based upon, arising out of, or in any way involving any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: antitrust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships;

**6.** Based upon, arising out of, or in any way involving conduct of the Insured or at the Insured's direction that is intentional, willful, dishonest, fraudulent or that constitutes a willful violation of any statute or regulation; provided, however, this exclusion shall not apply to: (a) the strictly vicarious liability of any Insured for the intentional, willful, dishonest or fraudulent conduct of another Insured or for the conduct of another Insured that constitutes a willful violation of any statute or regulation; or (b) Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be intentional, willful, dishonest or fraudulent or a willful violation of any statute or regulation;

**7.** Based upon, arising out of, or in any way involving any:

    **a.** Actual, alleged or threatened discharge, disposal, migration, dispersal, release or escape of Pollutants; or

    **b.** Direction, order or request to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or to pay for or contribute to the costs of undertaking such actions;

**8.** Brought by or on behalf of any Employee, former Employee or prospective Employee based upon, arising out of, or in any way involving the employment relationship or the nature, terms or conditions of employment or any workplace tort;

EVANSTON_000058      Exh. A 059

9.    Brought by, in the name of, or on behalf of any past or current principal, partner, officer, director, trustee, shareholder, Employee, Volunteer Worker, manager or member of the Named Insured; provided, however, this exclusion shall not apply to any Claim arising out of Unauthorized Access or Potential Unauthorized Access to the personal information of any past or current principal, partner, officer, director, trustee, shareholder, Employee, Volunteer Worker, manger or member of the Named Insured which is in the care, custody or control of the Named Insured;

10.   Based upon, arising out of, or in any way involving the insolvency, receivership, bankruptcy, liquidation of the Named Insured or of any subsidiary thereof whether or not included in the definition of Insured;

11.   Based upon or arising out of any warranties or guarantees, express, implied or otherwise, or any cost estimates;

12.   Based upon or arising out of any conversion, misappropriation, commingling of or defalcation of funds or property;

13.   Based upon or arising out of any inability or failure of any party to pay or collect monies;

14.   Based upon or arising out of infringement or inducement of infringement of patent or trade secret; or

15.   Based upon, arising out of, or in any way involving an act, error or omission in the performance of professional services rendered or that should have been rendered by the Insured or by any person or organization for whose acts, errors or omissions the Insured is legally responsible.

**B.**   With respect to DataBreach$^{SM}$ COVERAGE A. - Data Breach and Privacy Liability Coverage Part this Endorsement does not apply to any Claim:

1.    Made by any person or organization which is operated, managed or owned, in whole or in part, by the Named Insured or any parent organization, subsidiary, division or affiliated organization thereof.

**C.**   With respect to DataBreach$^{SM}$ COVERAGE B. - Data Breach Loss to Insured Coverage Part, this Endorsement does not apply to any Loss:

1.    Caused by theft, physical damage or destruction of the Named Insured's Electronic Communications System or any part thereof; provided, however, this exclusion shall not apply to destruction of programs, electronic data and media caused by an Unauthorized Access;

2.    Based upon or arising out of theft, or alleged theft, of money, securities, bonds, or similar financial instruments with monetary value caused or contributed to by any fraudulent, dishonest or criminal act committed by any person who is a past or current principal, partner, officer, director, trustee, shareholder, Employee, Volunteer Worker, manager or member of the Named Insured at the time of the Unauthorized Access, whether acting alone or in collusion with others; or

3.    Of the value of trade secrets, confidential processing methods or other confidential or proprietary information.

**5.**   Section TERRITORY is deleted and replaced with the following:

**TERRITORY**

The insurance afforded by this Endorsement applies worldwide, provided the Claim is made or the Loss is incurred in the United States of America, its territories or possessions or Puerto Rico.

**6.**   Section LIMITS OF LIABILITY is deleted and replaced with the following:

**LIMITS OF LIABILITY**

**A.**   **Limit of Liability - DataBreach$^{SM}$ COVERAGE A. - Data Breach and Privacy Liability Coverage Part - Each Claim:**  The liability of the Company under DataBreach$^{SM}$ COVERAGE A. - Data Breach and Privacy Liability Coverage Part for the combined total of Damages, Regulatory Fines and Claim Expenses for each Claim first made against the Insured during the Policy Period or Extended Reporting Period, if exercised, and reported to the Company pursuant to Section CLAIMS, LOSS AND EXPENSES A., Claim Reporting Provision, shall not exceed the $50,000.

**B.**   **Limit of Liability - DataBreach$^{SM}$ COVERAGE B. - Data Breach Loss to Insured Coverage Part - Each Unauthorized Access:**  The liability of the Company under DataBreach$^{SM}$ COVERAGE B. - Data Breach Loss to Insured Coverage Part for all Loss resulting directly from each Unauthorized Access which occurs

EVANSTON_000059

Exh. A 060

during the Policy Period and is reported to the Company pursuant to Section CLAIMS, LOSS AND EXPENSES B., Loss Reporting Provision, shall not exceed $5,000.

**C.** **Limit of Liability – DataBreach<sup>SM</sup> COVERAGE C. - Breach Mitigation Expense Coverage Part - Each Unintentional Data Compromise:** The liability of the Company under DataBreach<sup>SM</sup> COVERAGE C. - Breach Mitigation Expense Coverage Part for Breach Mitigation Expense for any Unintentional Data Compromise which occurs during the Policy Period and is reported to the Company pursuant to Section CLAIMS, LOSS AND EXPENSES C., shall not exceed $50,000.

**D.** **Limit of Liability - Aggregate:** Subject to the above Limits of Liability A., B. and C., the combined total liability of the Company for all coverage afforded by all Coverage Parts of this Endorsement shall not exceed $50,000.

**E.** **Multiple Insureds, Claims, Losses and Claimants:** The inclusion herein of more than one Insured in any Claim or the making of Claims by, or reporting of Loss incurred by, more than one person or organization shall not operate to increase the Limits of Liability stated in this Endorsement.

   **1.** With regard to DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part, more than one Claim arising out of a single Unauthorized Access or Interrelated Unauthorized Accesses shall be treated as a single Claim. Such single Claim shall be deemed first made on the date on which the earliest Claim arising out of such Unauthorized Access or Interrelated Unauthorized Accesses is made or with regard to notice given to and accepted by the Company pursuant to Section CLAIMS, LOSS AND EXPENSES D., Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company.

   **2.** With regard to DataBreach<sup>SM</sup> COVERAGE B. - Data Breach Loss to Insured Coverage Part, more than one Loss arising out of a single Unauthorized Access shall be considered a single Unauthorized Access.

   **3.** With regard to DataBreach<sup>SM</sup> COVERAGE C. - Breach Mitigation Expense Coverage Part, all Breach Mitigation Expenses arising out of a single Unintentional Data Compromise or a series of related Unintentional Data Compromises, shall be treated as a single Unintentional Data Compromise.

**7.** Section DEFENSE AND CLAIM EXPENSES is deleted and replaced with the following:

**DEFENSE AND CLAIM EXPENSES**

**A.** **Defense and Investigation of Claims:** With regard to DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part, the Company shall have the right and duty to defend the Insured and to investigate any Claim to which coverage afforded by this Endorsement under DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part applies pursuant to the following provisions:

   **1.** Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in this Endorsement. Such Claim Expenses shall reduce the applicable Limits of Liability. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability have been exhausted by payment(s) of Damages and/or Claim Expenses.

   **2.** The Company shall select defense counsel; provided, however, that if the law of the state of the Named Insured's domicile, stated in the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

      **a.** Providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

      **b.** Providing any other reasonable information requested;

      **c.** Providing fully itemized billing on a periodic basis; and

      **d.** Cooperating with the Company and the Insured in resolving any discrepancies;

EVANSTON_000060                    Exh. A 061

and the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as set forth above, shall be included in Claim Expenses. Such Claim Expenses shall be a part of and shall not be in addition to the applicable Limits of Liability stated in this Endorsement. Such Claim Expenses shall reduce the applicable Limits of Liability.

3.   The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

**B.   Claim Settlement:**  The Company may, at its sole discretion, investigate, negotiate and settle any Claim. The Named Insured will abide by the terms of such settlement.

**C.   Loss or Breach Mitigation Expense Payment:**  The Company may, at its sole discretion, investigate any Loss, any Breach Mitigation Expense, any Unintentional Data Compromise and any Unauthorized Access or Potential Unauthorized Access. The Company will indemnify the Named Insured within sixty (60) days after it receives the sworn proof of Loss under DataBreach$^{SM}$ COVERAGE B. - Data Breach Loss to Insured Coverage Part or satisfactory written proof of payment of Breach Mitigation Expenses under DataBreach$^{SM}$ COVERAGE C. - Breach Mitigation Expense Coverage Part, provided:

1.   The Insured has complied with all the terms of this Endorsement; and

2.   The Company and the Named Insured have agreed with the items included within and the amounts documented in the Named Insured's sworn proof of Loss and satisfactory written proof of payment of Breach Mitigation Expenses.

8.   Section CLAIMS is deleted and replaced with the following:

**CLAIMS, LOSS AND EXPENSES**

**A.   Claim Reporting Provision:**  It is a condition precedent to coverage afforded by this Endorsement under DataBreach$^{SM}$ COVERAGE A. - Data Breach and Privacy Liability Coverage Part that the Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and in no event later than sixty (60) days after the end of the Policy Period or the Extended Reporting Period, if exercised.

In the event a suit is brought against the Insured or a charge against the Insured is instituted by any Authority or any administrative action is initiated by an Authority, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

**B.   Loss Reporting Provision:**  It is a condition precedent to coverage afforded by this Endorsement under DataBreach$^{SM}$ COVERAGE B. - Data Breach Loss to Insured Coverage Part that the Named Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable and in no event later than sixty (60) days after the end of the Policy Period of any Loss which results directly from an Unauthorized Access which occurs during the Policy Period.

In the event of any Loss, the Insured must:

1.   Notify law enforcement in the event of a theft;

2.   Give the Company prompt notice of the Unauthorized Access;

3.   As soon as practicable, provide a description of how, when and what elements of the Named Insured's Electronic Communications System were impacted by the Unauthorized Access;

4.   Take all reasonable steps to protect the Named Insured's Electronic Communications System from further Unauthorized Access and to reduce Loss;

5.   As often as may be reasonably required, permit the Company to inspect the Named Insured's Electronic Communications System and examine the Insured's books and records related to the Loss incurred; and

6.   Provide, within sixty (60) days of the Company's request, a sworn proof of Loss, signed by the Named Insured, containing the information the Company requests to investigate the Loss.

**EVANSTON_000061**                Exh. A 062

**C.** **Breach Mitigation Expense Reporting Provision:** It is a condition precedent to coverage afforded by this Endorsement under DataBreach[SM] COVERAGE C. - Breach Mitigation Expense Coverage Part that the Named Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable and in no event later than sixty (60) days after the end of the Policy Period of any Unintentional Data Compromise, Unauthorized Access or Potential Unauthorized Access which occurs during the Policy Period.

The Named Insured must:

**1.** Submit to the Company satisfactory written proof of payment of such Breach Mitigation Expenses within one (1) year after the expiration or cancellation of this policy;

**2.** As soon as practicable, provide a description of how, when and what elements, if any, of the Named Insured's or a third party's Electronic Communications System were impacted by the Unintentional Data Compromise, Unauthorized Access or Potential Unauthorized Access;

**3.** Take all reasonable steps to protect the Named Insured's Electronic Communications System from further Unauthorized Access, if applicable;

**4.** As often as may be reasonably required, permit the Company to inspect the Named Insured's Electronic Communications System and examine the Insured's books and records related to the Breach Mitigation Expense incurred.

**D.** **Discovery Clause:** Under DataBreach[SM] COVERAGE A. - Data Breach and Privacy Liability Coverage Part, if during the Policy Period, the Insured first becomes aware of a specific Unauthorized Access or specific Potential Unauthorized Access which is reasonably expected to result in a Claim within the scope of coverage of this DataBreach[SM] COVERAGE A. - Data Breach and Privacy Liability Coverage Part, then the Insured may provide written notice as stated in the Notices item of the Declarations to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Unauthorized Access or Potential Unauthorized Access shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is first received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

**1.** The description of the specific Unauthorized Access or Potential Unauthorized Access;

**2.** The date on which such Unauthorized Access or Potential Unauthorized Access took place;

**3.** The injury or damage which has or may result from such Unauthorized Access or Potential Unauthorized Access;

**4.** The identity of any injured persons and/or organization subject to such injury or damage; and

**5.** The circumstances by which the Insured first became aware of such Unauthorized Access or Potential Unauthorized Access.

Subject to the paragraph hereinabove, if during the Policy Period the Insured provides such written notice of a specific Unauthorized Access or Potential Unauthorized Access which is reasonably expected to result in a Claim within the scope of coverage of this DataBreach[SM] COVERAGE A. - Data Breach and Privacy Liability Coverage Part, the Company at its sole option, may investigate such specific Unauthorized Access or Potential Unauthorized Access. Such matter shall be subject to all terms, conditions and provisions in this Endorsement as applicable to a Claim.

**E.** **Assistance and Cooperation of the Insured:** The Insured shall cooperate with the Company and upon the Company's request, the Insured shall:

**1.** Submit to examination and interview by a representative of the Company and while not in the presence of any other Insured, under oath if required;

**2.** Attend hearings, depositions and trials;

**3.** Assist in effecting settlement, securing and giving evidence and obtaining the attendance of witnesses in the conduct of suits; and

**4.** Give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and/or investigating any Claim or Loss and/or defending any Claim;

All without cost to the Company. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the Insured may have.

The Insured shall not, with respect to any Claim covered under this Endorsement, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur Claim Expenses without the Company's prior written consent, such consent not to be unreasonably withheld. Any costs and expenses incurred by the Insured prior to the Insured giving written notice of the Claim to the Company shall be borne by the Insured.

**F.   False or Fraudulent Claims:**  If any Insured shall commit fraud in proffering any Claim or Loss, this insurance shall become void as to such Insured from the date such fraudulent Claim or Loss is proffered.

**9.** Section EXTENDED REPORTING PERIOD is deleted and replaced with the following:

**EXTENDED REPORTING PERIOD**

**A.** With regard to DataBreach$^{SM}$ COVERAGE A. - Data Breach and Privacy Liability Coverage Part, the Named Insured's right to exercise the Extended Reporting Period under this Endorsement shall exist solely if the Named Insured also exercises its right to purchase the Extended Reporting Period under all Insuring Agreements in the policy for which an Extended Reporting Period is available.

**B.**  If the Named Insured nonrenews this policy or cancels this policy pursuant to Common Policy Conditions A., Cancellation, or if the Company nonrenews this policy or cancels this policy pursuant to Common Policy Conditions A., Cancellation, for reasons other than nonpayment of premium, Deductible and/or Co-Insurance Obligation or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right upon payment of an additional premium calculated at the percentage stated in the Declarations of the adjusted annual premium for the Policy Period, subject to adjustment as per Common Policy Conditions J., Premium and Audit, but in no event less than the percentage stated in the Declarations of the annual minimum premium for the policy, to extend the coverage granted under DataBreach$^{SM}$ COVERAGE A. - Data Breach and Privacy Liability Coverage Part for the period of months stated in the Declarations, as elected by the Named Insured, to apply to Claims first made against the Insured during the period of months as elected, and reported to the Company pursuant to Section CLAIMS, LOSS AND EXPENSES A., Claim Reporting Provision of this Endorsement, following immediately upon the effective date of such cancellation or nonrenewal, by reason of any Unauthorized Access or Potential Unauthorized Access the entirety of which happened during the Policy Period or on or after the Retroactive Date stated in Section INSURING AGREEMENT, DataBreach$^{SM}$ COVERAGE A. - Data Breach and Privacy Liability Coverage Part, Item 1., and prior to the effective date of such cancellation or nonrenewal and which is otherwise covered by this Endorsement. This extended period of coverage as elected by the Named Insured and described in this paragraph shall be referred to in this policy as the Extended Reporting Period.

If, however, this policy is immediately succeeded by similar claims made insurance coverage on which the applicable Retroactive Date is the same as or earlier than that stated above, the succeeding insurance shall be deemed to be a renewal hereof and, in consequence, the Named Insured shall have no right to purchase an Extended Reporting Period.

The quotation of a different premium and/or Deductible and/or Co-Insurance Obligation and/or Limit of Liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

**C.** As a condition precedent to the right to purchase the Extended Reporting Period, the Named Insured must have paid:

**1.** All Deductibles when due;

**2.** All Co-Insurance Obligations when due;

**3.** All premiums due for the Policy Period; and

**4.** All premium, deductibles and co-insurance obligations due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement.

The right to purchase the Extended Reporting Period shall terminate unless a written notice as stated in the Notices item of the Declarations of such election for the Extended Reporting Period is received by the Company within thirty (30) days after the effective date of cancellation or nonrenewal together with payment of the additional deposit premium for the Extended Reporting Period. If such written notice of request and payment of additional premium for the Extended Reporting Period are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

**D.** The Named Insured shall pay any additional premium that may be due as a result of audit, promptly when due.

**E.** In the event of the purchase of the Extended Reporting Period the entire premium therefor shall be fully earned at its commencement.

**F.** The Extended Reporting Period shall not in any way increase the Limits of Liability stated in this policy or in this Endorsement.

**10.** Section OTHER CONDITIONS is amended by the addition of the following:

**Mitigation:** It is a condition precedent to coverage that the Insured shall not willfully fail to comply with any Security Breach Notice Law that the Named Insured may be subject to, by reason of an Unauthorized Access or Potential Unauthorized Access.

**11.** The following Conditions and provisions of the policy shall also apply to the coverage afforded by this Endorsement.

Cancellation,
Representations,
Entire Agreement,
Other Insurance,
Changes,
Assignment of Interest,
Subrogation,
Assistance and Cooperation of the Insured,
False and Fraudulent Claims,
Premium and Audit,
Inspection
Action Against the Company,
Authorization, and
Service of Suit.

All other terms and conditions remain unchanged.

**MESM 2034 08 15**                                                                                    **Page 12 of 12**

POLICY NUMBER: SM931910

**MARKEL®**

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SEXUAL ACTS LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following but only if such Coverage Part is purchased and attached to this policy:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

**I.** Specified Medical Professions Professional Liability Insurance Coverage Part is amended as follows:

Section INSURING AGREEMENT is amended by the addition of the following:

**1.** **Sexual Acts Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section CLAIMS A., Claim Reporting Provision, for Sexual Injury arising out of any Sexual Act perpetrated or alleged to have been perpetrated by the Insured natural person or by any person for whose actions the Insured is legally responsible, or for allegations that the Insured was negligent in hiring, training or supervising any Insured natural person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury provided:

    **1.** Such Sexual Act is perpetrated or alleged to have been perpetrated during the Policy Period or on or after the Retroactive Date stated in the Declarations and before the end of the Policy Period; and

    **2.** Prior to the effective date of this policy the Insured had no knowledge of such Sexual Act or any fact, circumstance, situation or incident involving such Sexual Act which may lead a reasonable person in the Insured's position to conclude that a Claim was likely.

**2.** Section DEFINITIONS is amended by the addition of the following:

**Sexual Act** means sexual abuse, sexual molestation or sexual exploitation arising out of the conduct of the Insured's Professional Services.

**Sexual Injury** means bodily injury, sickness, disease, unlawful detention, false imprisonment, humiliation, emotional distress, mental anguish, sexual dysfunction, invasion of right of privacy, assault or battery, solely when arising out of a Sexual Act.

**3.** Section THE EXCLUSIONS L. is deleted.

**4.** Section THE EXCLUSIONS is amended by the addition of the following exclusions:

    **(i)** Any Insured who perpetrates or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury; provided, however, the Company shall defend such Insured and pay Claim Expenses on their behalf unless it is established in fact that such Insured perpetrated such Sexual Act;

    **(ii)** Any manager, supervisor, partner, officer, director or trustee who gains knowledge of any actual or alleged Sexual Act and fails to take reasonable care to prevent a future Sexual Act;

**MESM 2057 08 15**

**Page 1 of 2**

EVANSTON_000065

Exh. A 066

**(iii)** Any Claim based upon or arising out of any Sexual Act which is perpetrated or alleged to have been perpetrated by an Insured who previously perpetrated or is alleged to have previously perpetrated a Sexual Act, and after a manager, supervisor, partner, officer, director or trustee has gained knowledge of the previously perpetrated or previously alleged to have been perpetrated Sexual Act; or

**(iv)** Any Claim based upon or arising out of Sexual Injury to any Employee of the Insured.

**5.** Section LIMITS OF LIABILITY is amended by the addition of the following:

**F.** **Limit of Liability - Sexual Acts Liability Coverage**: The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims under Sexual Liability Coverage insured herein is limited to:

**1.** $1,000,000   All Claims Made by Each Claimant

**2.** $3,000,000   All Claims under Sexual Acts Liability Coverage

**G.** **Multiple Sexual Acts:** Two or more Sexual Acts against one person shall be deemed to be one Sexual Act and shall be subject to the coverage and limits in effect at the time of the first Sexual Act.

**6.** Section LIMITS OF LIABILITY B. is amended by the addition of the following:

Subject to Section LIMITS OF LIABILITY F., Limits of Liability - Sexual Acts Liability Coverage, the total liability of the Company under this endorsement for all Damages and Claim Expenses for all Claims insured herein because of Sexual Injury or allegations that the Insured was negligent in hiring, training or supervising any Insured natural person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury shall be part of and not in addition to the Specified Medical Professions Professional Liability Insurance Coverage Part Aggregate Limit of Liability stated in the Declarations, arising out of all Claims first made against the Insured during the Policy Period and the Extend Reporting Period, if exercised.

**II.** Specified Medical Professions General Liability Insurance Coverage Part is amended as follows:

**1.** Section DEFINITIONS is amended by the addition of the following:

**Sexual Act** means sexual abuse, sexual molestation or sexual exploitation arising out of the conduct of the Insured's Professional Services.

**Sexual Injury** means bodily injury, sickness, disease, unlawful detention, false imprisonment, humiliation, emotional distress, mental anguish, sexual dysfunction, invasion of right of privacy, assault or battery, solely when arising out of a Sexual Act.

**2.** Section THE EXCLUSIONS A. is amended by the addition of the following exclusions:

**(i)** Based upon or arising out of any Sexual Injury; or

**(ii)** Based upon or arising out of any allegations that the Insured was negligent in hiring, training or supervising any person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury.

All other terms and conditions remain unchanged.

**EVANSTON_000066**                    Exh. A 067



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – OCCURRENCE

In consideration of the premium paid, it is understood and agreed that the policy is amended as follows:

**A.** The SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART is amended as follows:

**1.** Section DEFINITIONS is amended by the addition of the following:

**Unmanned Aircraft** means an aircraft that is not designed, manufactured, or modified after manufacture, to be controlled directly by a person from within or on the aircraft.

**2.** Section THE EXCLUSIONS is amended by the addition of the following exclusion:

Any Claim based upon, arising out of or in any way involving the ownership, maintenance, use or entrustment to others of any aircraft that is an Unmanned Aircraft. Solely for purposes of this exclusion, "use" includes operation of or exercise of any control over an Unmanned Aircraft; and the Insured's authorization, direction or acquiescence in the operation or control of Unmanned Aircraft by any person or entity; and loading or unloading of any such Unmanned Aircraft. This exclusion applies even if any such Claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by the Insured, involving the ownership, maintenance, use or entrustment to others of any aircraft that is an Unmanned Aircraft.

**B.** The SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART is amended as follows:

**1.** Section DEFINITIONS B., Aircraft Products, is deleted and replaced as follows:

**B.** **Aircraft Products** means any aircraft whether or not heavier than air, including manned and Unmanned Aircraft, spacecraft and missiles, and any ground support, guidance, control or communications equipment used in connection therewith, and also includes parts, supplies, or equipment installed in or on or used in connection with aircraft, including tools, training aids, instructions, manuals, blueprints and other data, engineering and other advice, services and labor used in the operation, maintenance or manufacture of Aircraft Products.

**2.** Section DEFINITIONS is amended by the addition of the following:

**Unmanned Aircraft** means an aircraft that is not designed, manufactured, or modified after manufacture, to be controlled directly by a person from within or on the aircraft.

**3.** Section THE EXCLUSIONS A. is amended by the addition of the following:

Based upon, arising out of or in any way involving Bodily Injury, Property Damage or Personal Injury and Advertising Injury arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an Unmanned Aircraft. Solely for purposes of this exclusion, "use" includes operation of or exercise of any control over an Unmanned Aircraft; and the Insured's authorization, direction or acquiescence in the operation or control of Unmanned Aircraft by any person or entity; and loading or unloading of any such Unmanned Aircraft. This

**EVANSTON_000067**                    Exh. A 068

exclusion applies even if any such Claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by the Insured, if the Occurrence which caused the Bodily Injury or Property Damage or the offense which caused the Personal Injury and Advertising Injury involved the ownership, maintenance, use or entrustment to others of any aircraft that is an Unmanned Aircraft.

**4.** Section THE EXCLUSIONS B.6. is deleted and replaced as follows:

**6.** Based upon or arising out of Bodily Injury or Property Damage arising out of ownership, maintenance, operation, use or entrustment to others or loading or unloading of:

   **a.** Any Auto, aircraft other than an Unmanned Aircraft or watercraft owned or operated by or rented or loaned to any Insured; or

   **b.** Any other Auto, aircraft other than an Unmanned Aircraft or watercraft operated by any person in the course of their employment or activities on behalf of the Named Insured;

   This exclusion applies even if any such Claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by the Insured, if the Occurrence which caused the Bodily Injury or Property Damage involved the ownership, maintenance, use or entrustment to others of any aircraft other than Unmanned Aircraft, Auto or watercraft that is owned or operated by or rented or loaned to any Insured;

   provided, however, this exclusion shall not apply to:

   **(1)** The parking of an Auto on premises owned by, rented to or controlled by the Named Insured or on ways next to such premises, if such Auto is not owned by or rented or loaned to any Insured;

   **(2)** A watercraft while ashore on premises owned by, rented to or controlled by the Named Insured; or

   **(3)** A watercraft that is less than twenty-six (26) feet in length, that is not owned by the Named Insured and that is not being used to carry persons or property for a charge;

All other terms and conditions remain unchanged.

**MESM 3015 08 15**        Includes copyrighted material of Insurance Services Office, Inc. with its permission.        **Page 2 of 2**

EVANSTON_000068

Exh. A 069



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MOLD EXCLUSION

In consideration of the premium paid, it is hereby understood and agreed that this policy does not apply to any Claim based upon, arising out of, or in any way involving **Mold** or **Mold Event**.

Solely for the purposes of this endorsement:

**Mold** means any permanent or transient fungus, mold, mildew or mycotoxin, or any of the spores, scents or by-products resulting therefrom that exist, emanate from or move anywhere indoors or outdoors, regardless of whether they are proved to cause disease, injury or damage.

**Mold Event** means any actual, alleged or threat of contact with, exposure to, or inhalation, ingestion, absorption, discharge, dispersal, seepage, migration, release, escape, presence, growth or reproduction of **Mold**.

All other terms and conditions remain unchanged.

ZZ-44002-01                                                                                                    **Page 1 of 1**